**In the Matter of the ESTATE OF Harold G. MEYER.**

**Janet Cleland, Beth Garrigus, Tim Cleland, Gary Cleland, Dianne Carlsson and Tamara Cleland, and Bank One, as Personal Representative of the Estate of Harold G. Meyer and as Successor Trustee of the Trust Created by Harold G. Meyer dated March 25, 1985, Appellants,**

**v.**

**Scot L. Burke, and Kathy A. Burke, Individually and as Beneficiaries of Trust No. P–3680, Bank Calumet, and Peoples Bank, as Successor Trustee of The Harold G. Meyer Trust Dated February 6, 2000, No. P–3680, Appellees.**

No. 45A03–0005–CV–162.

Court of Appeals of Indiana.

May 15, 2001.

Joseph E. Costanza, Kathryn D. Schmidt, Burke Costanza & Cuppy LLP, Merrillville, IN, David A. Baker, Julie K. Kwon, Peggy A. Zemanick, McDermott, Will & Emery, Chicago, IL, Attorneys for Appellants.

Robert E. Stochel, Hoffman & Stochel, Crown Point, IN, Attorney for Scot L. Burke & Kathy A. Burke. .

David C. Jensen, Alyssa Stamatakos, Scott B. Cockrum, Eichhorn & Eichhorn, Hammond, IN, Attorneys for Bank Calumet.

## OPINION

MATHIAS, Judge.

This is a consolidated appeal regarding the estate of Harold G. Meyer, who died on March 30, 1997. Janet Cleland and her children Beth Garrigus, Tim Cleland, Gary Cleland, Dianne Carlsson, and Tamara Cleland ("the Clelands") brought this appeal challenging the creation of a 1990 inter vivos trust benefiting Meyer's grand-niece, Kathy Burke, and her husband Scot, who also served as Meyer's attorney on unrelated matters. Bank Calumet, the trustee, was joined as a party in the consolidated appeal. The Clelands raise several issues, which we restate as the following three:

I. Whether the trial court erred in granting summary judgment in favor of the Burkes on the issue of Meyer's capacity to create the Trust;

II. Whether the trial court erred in granting summary judgment in favor of the Burkes on the issue of Scot's alleged undue influence; and

III. Whether the trial court erred on several evidentiary rulings and in granting summary judgment in favor of Bank Calumet on the issue of the transfer of stock to the Trust.

We reverse the grant of summary judgment on the issue of capacity, and affirm the trial court on the remaining issues.[1]

### Facts and Procedural History

For several decades, Meyer operated a heating and air conditioning business in Hammond. In 1951, Meyer's son-in-law

---

1. Both Bank Calumet and the Burkes raise other issues on cross-appeal. However, in light of our disposition of the case, it is not necessary to address most of these issues, which primarily concern the issues of undue influence and stock transfers, both of which have been resolved against the Clelands.

Harvey Cleland began working with him and later shared office space to operate a plumbing and electrical business. In 1985, the business and personal relationship between Meyer and Harvey deteriorated over Meyer's allegations, ultimately unsubstantiated, that Harvey had stolen a check from him. Harvey decided to move his business to a new location, and attorney Scot Burke represented Meyer in proceedings to obtain a temporary restraining order related to the move. In the midst of this controversy, Meyer executed a trust on March 25, 1985 and a Will on April 1 of the same year. His Will gave the residue of his estate to the 1985 Trust, which was to benefit Janet Cleland, his daughter and Harvey's wife, during her life, and her descendants after her death.

A month later, Meyer brought a declaratory judgment action against Janet over some securities that he believed he owned. The court eventually granted Janet's motion for summary judgment. Scot represented Meyer in that proceeding and also represented him in the 1989 dissolution of his second marriage to Mary Meyer, Janet's mother.

On February 6, 1990, Meyer executed another trust (the "1990 Trust"), funded with 38,120 shares of Bank Calumet stock, which provided for complete distribution to Scot and Kathy Burke upon Meyer's death. Meyer died on March 30, 1997, and an autopsy concluded that, during his life, Meyer had suffered from Alzheimer's disease and at least five strokes.

Meyer's Will was admitted to probate on April 8, 1997. On June 27, 1997, the Clelands filed a motion to discover assets, alleging that Meyer was incapacitated by dementia and subjected to undue influence by Scot when he executed the 1990 Trust. The Clelands also contended in the trial court that the 1990 Trust was a nullity because of invalid stock transfers. After a flurry of pleadings from all parties, the trial court granted the motions for summary judgment filed by both Bank Calumet and the Burkes. The Clelands appeal those rulings, and both Bank Calumet and the Burkes cross-appeal on related issues.

## Summary Judgment Standard of Review

■ On appeal the standard of review of a summary judgment motion is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Butler v. City of Peru,* 733 N.E.2d 912, 915 (Ind.2000) (citing Ind. Trial Rule 56(C)). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Id.* The review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* (citing T.R. 56(H)). We must carefully review decisions on summary judgment motions to ensure that the parties were not improperly denied their day in court. *Id.*

## I. Incapacity

The Clelands contend that the trial court erred in granting the Burkes' motion for summary judgment because their designated evidence creates a genuine issue of material fact as to Meyer's capacity to execute the 1990 trust. They rely primarily on the affidavit of Dr. Daniel Luchins, a geriatric psychiatrist who examined Meyer in February of 1997 and reviewed Meyer's medical records dating back to 1985. The records showed that Meyer had complained of sharp head pain as early as 1986. In 1988, he complained of lethargy, tiredness, decreased mental activity, forgetfulness, occasional dizziness, progressive mental loss, and excessive sleep patterns. Meyer was prescribed Hydergine,

a standard medication used to treat dementia, during the same year. A 1993 CT scan showed brain atrophy, and a 1994 CT scan suggested vascular dementia and nonfocal brain changes. Upon his examination in 1997, Dr. Luchins reported that Meyer "demonstrated clinically reliable symptoms of advanced Alzheimer's Disease, including an infantile grasp reflex, which returns to Alzheimer's patients in the late stages of the disease." R. at 353. Meyer's autopsy revealed that he had Alzheimer's disease and the neuropathic forensic examination conducted after death showed that Meyer had suffered from several strokes. Dr. Luchins opined that some of Meyer's symptoms from 1986 to 1988 were consistent with stroke damage. Dr. Luchins' affidavit concluded:

15. Based on the foregoing medical records and my examination of Mr. Meyer, it is my opinion that Mr. Meyer suffered from Alzheimer's Disease for years prior to his death and also was affected for years by the cumulative impact of several strokes. He demonstrated symptoms of these conditions at least as early as 1988, but onset was probably earlier. As a consequence of these conditions, at least as early as February, 1990, Mr. Meyer would have been susceptible to undue influence, would have lacked the ability to comprehend the nature and effect of various property transactions, including but not limited to, the creation of trusts, the transfer of assets to trusts and persons, and the negotiation, consummation and terms of contracts, and would have lacked the

ability to exercise free and voluntary will with respect to the same.

R. at 354.

A. *Motion to Strike*

██ The Burkes orally moved to strike Dr. Luchins' affidavit pursuant to Evidence Rule 702. The trial court denied the motion to strike, reasoning that Dr. Luchins qualified as an expert witness and stated an admissible expert opinion under Evidence Rule 702 based on his review of Meyer's medical records and a personal examination of Meyer. R. at 2456. The Burkes contend that this ruling is erroneous, but offer no precedent under Indiana Evidence Rule 702 in support.[2]

██ A trial court has broad discretion in refusing to grant a motion to strike. *Rausch v. Reinhold,* 716 N.E.2d 993, 999 (Ind.Ct.App.1999), *trans. denied.* The trial court's decision will not be reversed unless prejudicial error is clearly shown. *Id.* at 999–1000. We agree with the trial court that the affidavit was admissible under Rule 702. *See generally Rogers ex rel. Rogers v. Cosco,* 737 N.E.2d 1158, 1168 (Ind.Ct.App.2000) (observing that under Rule 702 "the court must determine whether the reasoning or methodology underlying the expert testimony is scientifically valid and whether it can be applied to the facts at issue").

The Burkes also posit that Dr. Luchins may not make the conclusions of fact and conclusions of law stated in paragraph 15 because he did not provide sufficient foundation and background to support the legal and factual conclusions contained therein.

2. The Burkes argue that "a number of other states have found and determined that the mere diagnosis of Alzheimer's disease does not, in and by itself, create incompetency." Brief of Appellee Burkes at 14. However, these cases are distinguishable because they are both factually dissimilar and arise from a different procedural posture. Here, Dr. Lu-

chins' opinion was based on more than a mere diagnosis of Alzheimer's disease. Moreover, the Clelands are merely attempting to defeat a summary judgment motion by showing a genuine issue of material fact, not to establish incompetence or incapacity as a matter of law.

As recounted above, the affidavit details Meyer's medical records before his death, Luchins' personal examination of Meyer, and the records from the autopsy and post-mortem brain examination. There was a sufficient basis for Dr. Luchins' affidavit and the trial court did not abuse its discretion in denying the Burkes' motion to strike.

### B. *Summary Judgment*

■ The trial court granted the Burkes' motion for summary on the basis that Dr. Luchins' affidavit, although admissible, was not entitled to much weight.

> [T]o say with any medical certainty that on February 6, 1990 (the date of the execution of the Burke trust) that [Meyer] was incapacitated is highly improbable. Dr. Luchins' opinion is to be considered with other affidavits, including those submitted by Burke. It is apparent to this Court that proceeding further would only cause undue delay in bringing this estate administration to a conclusion by the needless presentation of cumulative evidence, contrary to T.R. [sic] 403.

R. at 2456.

■ Although the trial court was understandably concerned about this case dragging on for months or years longer, it overstepped its bounds in granting summary judgment by weighing conflicting evidence. "[E]ven if the trial court believes that the nonmoving party will not prevail at trial, it may not enter summary judgment where material facts conflict or conflicting inferences arise from undisputed facts." *May v. Frauhiger*, 716 N.E.2d 591, 594 (Ind.Ct.App.1999); *see generally Funk v. Funk*, 563 N.E.2d 127, 129 (Ind. Ct.App.1990), *trans. denied* (observing that summary judgment is a lethal weapon and courts must be mindful of its aims and targets and beware of over-kill in its use). Because the Luchins' affidavit was admissible and created a genuine issue of material fact as to Meyer's capacity, the trial court erred in granting summary judgment for the Burkes on this issue.[3]

## II. Undue Influence

The Clelands next contend that the trial court erred in granting summary judgment to the Burkes on the issue of whether Scot unduly influenced Meyer to create the 1990 Trust. They base their claim on the well-established presumption of undue influence in transactions involving attorneys and their clients. *See generally Lucas v. Frazee*, 471 N.E.2d 1163, 1166 (Ind. Ct.App.1984).

### A. *Motion to Compel*

■ As a preliminary matter, we must address the Clelands' contention that the trial court erred in denying their motion to compel. In the course of discovery, the Clelands requested that Scot disclose "[a]ny and all documents and files of any nature maintained by you in connection with all legal services rendered to Harold G. Meyer" and "[a]ny and all personal documents and/or files of any nature maintained by you in regard to Harold G. Meyer." R. at 275. The trial court held a hearing on the issue, after which it issued

---

3. On cross-appeal, the Burkes allege that the trial court abused its discretion in striking portions of the affidavit of Marie Hickman, a long-time friend of Meyer's. In particular, the Burkes take issue with the striking of the paragraph that states, "At the time this Burke Trust was made, Harold knew what he owned and he knew how he wanted it to go at his death." R. at 239. Even if this testimony were erroneously stricken, it is of no consequence because, as explained above, the affidavit of Dr. Luchins created a genuine issue of material fact as to Meyer's capacity in 1990.

an order denying the motion. That order stated:

The requested documents, if any exist, are generic in nature and do not appear to entail testamentary dispositions of the Decedent. The Will currently admitted into Probate in this Court was drafted by an attorney other than SCOT L. BURKE. The "BURKE" Trust was drafted by yet another attorney. The broad request for production of matters involving decedent and his attorney is too vague and would be violative of the near sacred privilege of confidentiality between attorney and client, even after the death of client.

R. at 278. The Clelands filed a motion to reconsider, which focused on the attorney-client privilege issue but did not address the vagueness or overbreadth concerns of the trial court.[4]

■ Rulings on motions for discovery rest in the sound discretion of the trial court and will be reversed only for an abuse of that discretion. *Kronmiller v. Wangberg*, 665 N.E.2d 624, 629 (Ind.Ct. App.1996). An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts of the case. *Id.*

■ Here, the Clelands sought "any and all" documents pertaining to Scot's legal and personal relationship with Meyer. We agree with the trial court that this request was overly broad and vague. Indeed, as this Court observed in upholding a trial court's denial of a motion to compel in another case,

[t]he request sets forth neither the individual items nor the categories of items sought for inspection with reasonable particularity as required by the rules of discovery. *See* Ind. Trial Rule 34(B) (a request for the production of documents "shall set forth the items to be inspected either by individual item or by category, and describe each item and category with reasonable particularity").

*Id.* at 630. Under these facts and circumstances, the trial court did not abuse its discretion in denying the motion to compel.

B. *Other Evidentiary Rulings*

■ The Clelands also challenge other evidentiary rulings that preceded the grant of summary judgment. They first contend that the trial court abused its discretion in denying their motion to strike attorney Joseph Reid's affidavit "opinion that Meyer acted voluntarily in establishing the 1990 Trust" because it violates the prohibition on testimony as to "legal conclusions" under Evidence Rule 704(b). They cite neither specific language from the affidavit nor any decisional law in support. The affidavit merely recounts Reid's dealings with Meyer. It was properly admitted as lay testimony pursuant to Evidence Rule 701 and does not contain any impermissible legal conclusions under Rule 704(b).

■ The Clelands next assert that the trial court abused its discretion in failing to strike Marie Hickman's opinion that Meyer was, as they put it, "impervious to the influence of others." Brief of Appellants at 29.[5] Once again, they cite no

---

**4.** The parties agree that there is a testamentary exception to the posthumous survival of the attorney client privilege in regard to communications respecting the execution of the Will or other similar documents. *Swidler & Berlin v. United States*, 524 U.S. 399, 405, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998); *see also Kern*

*v. Kern*, 154 Ind. 29, 33, 55 N.E. 1004 (1900). However, the Clelands' request was not limited to documents pertaining to the preparation of Meyer's will or the 1990 trust.

**5.** The Clelands also contend that the trial court erred in admitting Hickman's hearsay statement that Meyer had "asked [her] to take

specific affidavit language or decisional law in support. Rather, they baldly contend that Hickman's testimony was inadmissible under Evidence Rule 404(a) because it "was offered to prove that because Meyer was strong-willed, he was not unduly influenced to execute the 1990 Trust." We disagree that Rule 404(a) acts as a bar to Hickman's relevant, probative, and non-prejudicial statement in this case. *See* Ind.Evidence Rules 401, 403.[6]

### C. *Summary Judgment*

Turning to the merits of the summary judgment motion, we begin by noting that the relevant facts are not in dispute. Scot Burke acted as Meyer's attorney on a number of issues beginning in 1985. These included a 1985 temporary restraining order action against Harvey Cleland, a 1985 declaratory judgment action against Janet, and Meyer's 1989 divorce. The 1990 Trust at issue in this case was prepared by attorney Joseph Reid, an independent attorney, without any involvement of Scot.

■ The presumption of undue influence is inapplicable under these circumstances. *Sweeney v. Vierbuchen*, 224 Ind. 341, 66 N.E.2d 764 (1946) (quoting *Matter of Putnam's Will*, 257 N.Y. 140, 177 N.E. 399 (1931)) ("Attorneys for clients who intend to leave them or their families a bequest would do well to have the will drawn by some other lawyer. Any suspicion which may arise of improper influence used under the cover of confidential relationship may thus be avoided."). The presumption arises when an attorney prepares a will or trust that ultimately benefits that attorney or his or her family, not merely when an attorney has had a fiduciary relationship with the testator or settlor at some point in time. Although it is clear that Scot was quite involved in the legal representation of Meyer in *other* cases, there is no evidence to suggest that Meyer's decision to create a trust was influenced by Scot in any way. Indeed, in this regard it is significant that the trust did not simply benefit Scot as Meyer's attorney, but rather jointly benefited Meyer's grandniece and her spouse, Scot, who also happened to be Meyer's attorney.

■ The Clelands further contend that, even if the presumption of undue influence is inapplicable in this case, they "offered extensive evidence indicating that the 1990 Trust resulted from Scot's undue influence and creating a genuine issue of material fact regarding undue influence." Brief of Appellant at 28. They point to the following: (1) medical evidence that Meyer

---

him to an attorney he had arranged to see to draft the trust." A–101. This statement has no bearing on our affirmance of the grant of summary judgment, and thus any error is harmless. Finally, the additional claims of error raised for the first time in the Clelands' reply brief are waived. *United States Gypsum, Inc. v. Indiana Gas Co.*, 735 N.E.2d 790, 797 n. 5 (Ind.2000).

**6.** On cross-appeal, the Burkes contend that the trial court erred in striking Scot's affidavit pursuant to the Dead Man's Statute, *see* Ind. Code § 34–45–2–4 (1998). They do not dispute that Scot was a "necessary party ... whose interest is adverse to the estate," *id.*, but contend that his testimony is excepted from the Dead Man's Statute because it relates to Meyer's "soundness of mind." *Estate of Verdi v. Toland*, 733 N.E.2d 25, 26 n. 1 (Ind.Ct.App.2000), *trans. denied.* Scot's affidavit did not address Meyer's soundness of mind but rather Scot's knowledge of the creation of the 1990 Trust. Thus, it does not fall within the *Verdi* exception and was properly stricken by the trial court.

The Burkes also argue on cross-appeal that the trial court erred in striking portions of the affidavits of Marie Hickman and Joseph Reid. However, we need not reach these claims because we sustain the trial court's grant of summary judgment in favor of the Burkes on this issue.

was suffering from Alzheimer's and had suffered from strokes in 1990 that rendered him "susceptible to undue influence," (2) Meyer's longtime friend Marie Hickman had denied Meyer's family access to him in his final years; (3) Scot had represented Meyer in litigation against his family, including a "baseless" lawsuit against Janet; (4) the 1990 Trust was prepared by Joseph Reid, Scot's "former legal associate;" and (5) Meyer was unable to remember simple biographical and asset information as early as 1987.

 These claims, while perhaps factual, have no legal merit. Whether Meyer's medical condition made him "susceptible" to undue influence is of no consequence unless the Clelands make some showing that Scot exercised undue influence over Meyer. They have made no such showing. Moreover, their contention is that Scot exercised undue influence over Meyer; thus, whether Marie Hickman limited the Clelands access to Meyer is irrelevant absent some showing that Scot was controlling Hickman. The Clelands have made no such showing on this point either. Next, although Scot's prior representation of Meyer demonstrates that Meyer must have trusted Scot and appreciated his legal competence, it does not establish the exertion of undue influence relating to the preparation of a Trust that Scot took no part in drafting. Moreover, Joseph Reid's preparation of the 1990 Trust is of no consequence because Reid was an independent attorney. His only relationship to

Scot was several years earlier when Scot, then a law student, clerked at the firm where Reid worked.[7] Finally, Meyer's inability to remember some biographical or asset information goes to the issue of capacity, which we have resolved in favor of the Clelands. *See* Part I, *supra.*[8] It is of no consequence to this issue absent some showing that Scot did something to exert influence over Meyer. For all of these reasons, the trial court properly granted summary judgment in favor of the Burkes on the issue of undue influence.

### III. Stock Transfers

The Clelands argue that the trial court erred in denying their motion for summary judgment and granting Bank Calumet summary judgment on issues related to the transfer of stock that created the 1990 Trust.

#### A. *The Motion to Strike*

As a preliminary matter we must address the Clelands' contention that the trial court abused its discretion in refusing to strike portions of the affidavit of Barry Sloat, an employee of Bank Calumet's Trust Department since 1989.

 The Clelands first contend that portions of the affidavit should have been stricken because they contradict Sloat's deposition testimony. A party cannot create an issue of material fact by submitting an affidavit that directly contradicts prior,

---

**7.** The Clelands also make much of the apparent admission of the Burkes' counsel that Scot sent Meyer to Reid for the drafting of the 1990 Trust. However, it is not clear if counsel was conceding the point or merely creating a hypothetical by "chang[ing] the facts to what [the Clelands] would like them to be." R. at 2586. Ultimately, it makes no difference in light of our supreme court's opinion in *Sweeney*, which posits that such a referral would be an entirely appropriate response to

a situation in which an individual tells his attorney that he wants to create a trust to benefit the attorney or his or her family.

**8.** Moreover, responses such as "I don't recall" to questions about specific details are not uncommon under hostile deposition questioning. It does not *ipso facto* suggest a mental defect that renders one susceptible to undue influence.

sworn deposition testimony. *Gaboury v. Ireland Road Grace Brethren, Inc.,* 446 N.E.2d 1310, 1313–14 (Ind.1983); *see also Darnell v. Target Stores,* 16 F.3d 174, 176–77 (7th Cir.1994). However, Sloat's cited deposition testimony addresses written directions of a trust officer and responds to a hypothetical question about oral instructions to deposit shares of another stock, whereas the affidavit addresses the sufficiency of Meyer's letter of direction. There was no direct contradiction, and thus no basis to strike the affidavit.

■ The Clelands also contend that the affidavit is inadmissible because it is not based on personal knowledge. Sloat testified in response to the Clelands' Trial Rule 30(b)(6) notice of deposition that requested Bank Calumet to produce a witness to testify about "[b]asic procedures and policies" of the Trust Department in 1989–90. R. at 762. Although Sloat assumed the position of Vice President and Trust Officer in 1991, he was employed in the trust department since 1989. In response to questioning about the bank's policies for recording and transferring stock, counsel for the Clelands asked if the policies described were the same as those in 1989–90. Sloat responded that the policies were "[t]he same as they were in 1991, '92, since I have become [sic] the policy—excuse me, the procedures have not changed." R. at 764. Sloat offered this testimony at the Clelands' insistence. Because he had sufficient personal knowledge to bind Bank Calumet under Trial Rule 30(b)(6), we see no basis for finding a lack of competence for him to testify as to the Trust Department's procedures in 1989–90.

■ Finally, the Clelands assert that Sloat's affidavit contained inadmissible

hearsay. The objectionable parts of the affidavit are based on bank records that were certified pursuant to and in accordance with Indiana Evidence Rule 803(6). The records were admissible under this hearsay exception, as was Sloat's affidavit testimony regarding the records.

In sum, the trial court did not abuse its discretion in denying the motion to strike.

### B. *Summary Judgment*

#### 1. *The 1963 Divorce Decree*

■ The Clelands first challenge the 1990 Trust based on a 1963 Porter County divorce decree involving the dissolution of Meyer's marriage to Helen Meyer.[9] The terms of the agreement required Meyer to pay Helen $1,000 per month until the time of her death. Pursuant to the agreement, Meyer created a trust that included 2,043 shares of Calumet National Bank stock to collateralize this obligation. The 1963 decree provided

> [A]ny attempted *voluntary* encumbrances or transfers of the wife's rights, or of husband's obligations, *or of the stock or property* securing same, made prior to her death, *shall be deemed void as to either or both of the husband and wife,*—both as being in violation of this Agreement and also as being in violation of this (Porter Circuit) Court's intent and letter of its decree embodying this Agreement.

R. at 440 (emphasis in original). The 1963 agreement provided that "this (Porter Circuit) Court shall have and retain exclusive and continuing jurisdiction over this Agreement and over the Trust therein contained until the wife's death and the making of payments then due...." R. at 442. By 1989, Meyer's stock in the escrow trust had grown to 41,411 shares. On October

---

**9.** Meyer was first married to Mary Meyer, Janet's mother, in 1927. They divorced and he married Helen in 1946. R. at 734–35. After divorcing Helen, he married Mary again in 1964. He and Mary were divorced in 1989.

30, 1989, Meyer and Helen executed a "Joint Request to Release Stock Held as Security," which recognized that Meyer had always paid his alimony obligation in a timely manner. According to the agreement, Helen released all but 3,000 shares of Calumet National Bank stock to Meyer. R. at 296–97.

The Clelands contend that this 1989 agreement between Helen and Meyer violated the 1963 divorce decree, and thus is void. Bank Calumet responds that the Clelands, as strangers to the 1963 divorce decree, lack standing to assert a breach of it. We agree with Bank Calumet.

■■■ It is basic, well-settled contract law that only those who are parties to a contract or those in privity with a con-tracting party have the right to enforce the contract. *OEC–Diasonics, Inc. v. Major,* 674 N.E.2d 1312, 1314–15 (Ind.1996); *Indiana Gaming Co. v. Blevins,* 724 N.E.2d 274, 277 (Ind.Ct.App.2000), *trans. denied.*[10] Thus, the Clelands' attempt to void the 1989 agreement between Meyer and Helen, which freed the stock that funded the 1990 Trust, must fail.[11]

### 2. Trust Requirements

■■■ Aside from the 1963 divorce decree, the Clelands also assert that the 1990 Trust fails because it did not comply with the legal requirements for transfer of a trust.[12]

■■■ In construing a trust, it is well-settled that courts must ascertain and ef-

**10.** The Clelands do not—and cannot—claim to be third-party beneficiaries to the 1963 agreement because Meyer and Helen did not intend to confer a benefit on them. *OEC–Diasonics,* 674 N.E.2d at 1315; *Mogensen v. Martz,* 441 N.E.2d 34, 36 (Ind.Ct.App.1982).

**11.** Although we have resolved this issue in favor of Bank Calumet on the basis of lack of standing, Bank Calumet is also correct that the Lake Superior Court lacked jurisdiction to consider the Clelands' assertions about the Porter County divorce decree. As our supreme court observed long ago, "It is well established that once a court acquired jurisdiction over parties, the jurisdiction continues until the final disposition of the litigation including the enforcement of the judgment or decree." *Lake–O'–The Woods Club v. Martinal,* 239 Ind. 31, 154 N.E.2d 498, 500 (1958). This jurisdiction includes enforcement and interpretation of the decree. *Indiana Dep't of Envtl. Mgmt. v. Conard,* 614 N.E.2d 916, 922 (Ind.1993). Under these authorities, the trial court lacked jurisdiction to rule on issues relating to the interpretation of the Porter Circuit Court divorce decree. If such issues were to be addressed at all, they would have to be decided by that court.

The Clelands' reliance on the concepts of judicial notice and full faith and credit is unavailing. Evidence Rule 201 expressly provides that Indiana courts may take judicial notice of facts and laws. Any judicially no-ticed fact "must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Here, the Clelands were not merely seeking the trial court's recognition of the existence of a 1963 decree from Porter County or its provisions. Rather, they sought the Lake Superior Court's interpretation of the Porter County decree in such a way that invalidated a subsequent trust. Moreover, the notion of "full faith and credit" has no applicability here. It requires that a trial court give legal effect to the order of another court. It does not permit—let alone require—that one trial court interpret the order of another trial court.

**12.** The Clelands' argument is largely devoted to the alleged insufficiency of the direction letter; however, as explained in text, the direction letter is not the only transfer instrument in this case. In addition, the Clelands point to some of Meyer's actions subsequent to the direction letter (executing assignments of the Trust shares and executing a proxy to allow Scot to vote the Trust shares), which they assert evinces his continuing dominion and control over the bank stock. This argument is unavailing. A settlor who creates a valid *inter vivos* trust may maintain control over the trust property. *See, e.g., In re Walz,* 423 N.E.2d 729, 732 (Ind.Ct.App.1981).

fectuate the intent of the settlor. *Malachowski v. Bank One, Indianapolis,* 590 N.E.2d 559, 565 (Ind.1992) (citing Ind. Code § 30–4–1–3 (requiring that courts "implement the intent of the settlor and the purposes of the trust"); *Powell v. Madison Safe Deposit & Trust Co.,* 208 Ind. 432, 448, 196 N.E. 324, 331 (1935)). Meyer's intention to create a trust benefiting Scot and Kathy Burke could not be any clearer. On February 6, 1990, Meyer executed an eight-page declaration of trust that stated in relevant part, "Upon my death, this Trust shall terminate and the Trust property shall be distributed to SCOT L. BURKE and KATHY A. BURKE, or to the survivor of them." R. at 497. A letter of direction dated on February 6, 1990 requested Bank Calumet to "immediately transfer 38,411 shares of Calumet National Corporation to the Harold G. Meyer Trust P–3860 dated February 6, 1990." R. at 457. Meyer gifted 201 of the shares to Scot on March 12, and executed a stock power with signature guarantee in which he sold, assigned, and transferred his remaining stock to CANAB Company, Bank Calumet's nominee, on March 21.

The Clelands rely largely on *Crawfordsville Trust Co. v. Ramsey,* 55 Ind.App. 40, 66, 100 N.E. 1049 (1913), in which this court noted that a valid gift of property requires "that the article given should be delivered absolutely and unconditionally." The settlor's failure to make a valid gift *inter vivos* of stock failed in *Ramsey* because the certificate was never delivered; it did not identify the trustee or donee; the stock was never transferred on the books of the corporation; and the would-be trustees never even knew about the trust. None of these defects is present in the instant case.

The Clelands also assert that the 1990 Trust is invalid because Meyer's purported transfer of stock did not comply with the bank's bylaws and provisions of its stock certificates. They allege that Meyer's direction letter "does not fulfill the corporate requirement of an endorsed and guaranteed stock certificate." Brief of Appellants at 43. However, the direction letter is not all that we have here. Meyer also executed two stock powers, one on March 12 and the other on March 21, 1990. According to the Sloat affidavit, these stock powers were sufficient to transfer title of the 201 shares to Scot and the remaining shares to CANAB, Bank Calumet's nominee. Meyer further delivered the certificates to Bank Calumet, the trustee and his fiduciary, where they remained until his death. There was sufficient compliance with the requirements for transfer and no breach of the by-laws or provisions of the stock certificates.

■■■ Finally, the Clelands suggest that Meyer had to transfer his stock first to Bank Calumet as trustee, then it had to convey the stock to its nominee, CANAB. They assert that, pursuant to its agency and nominee partnership agreement, CANAB's exclusive function is to hold title to stocks and other assets as nominee for Bank Calumet in its fiduciary capacity. The trust agreement and direction letter show Meyer's clear intent to fund the trust with bank stock. It was "not necessary that the trust be reflected in the conveyance under which title to the property was taken by the trustee." *Ross v. Thompson,* 128 Ind.App. 89, 146 N.E.2d 259, 265 (1957), *trans. denied.*

For all of these reasons, the grant of summary judgment in favor of Bank Calumet is affirmed.

### Conclusion

The grant of summary judgment to the Burkes on the issue of mental capacity is reversed and remanded for further pro-

ceedings. In all other respects, the trial court is affirmed.

Affirmed in part, reversed in part, and remanded for further proceedings.

SHARPNACK, C.J., and SULLIVAN, J., concur.