ESTATE OF Helen VERDI, Deceased, by Frank J. VERDI, Personal Representative and Frank J. Verdi, individually, Appellants–Plaintiffs,

v.

Peggy TOLAND, individually and Peggy Toland, as Executrix of the Last Will of Cecil Toon, Deceased, Appellees–Defendants.

No. 74A01–9908–CV–277.

Court of Appeals of Indiana.

July 31, 2000.

Rehearing Denied Sept. 6, 2000.

**26**

Jack R. Robinson, Rockport, Indiana, John R. Werner, Waldschmidt & Werner, Tell City, Indiana, Attorneys for Appellants.

Kevin R. Patmore, Price & Collins, Santa Claus, Indiana, Attorney for Appellees.

## OPINION

BAILEY, Judge

### Case Summary

Appellants–Plaintiffs the Estate of Helen Verdi, by Frank J. Verdi and Frank J. Verdi individually (collectively "the Verdi Estate"), appeal the trial court's order entering summary judgment in favor of Appellees–Defendants Peggy Toland as Executrix of the Last Will of Cecil Toon ("Testator") and Peggy Toland ("Niece") individually. We reverse.

### Issue

The Verdi Estate raises two issues on appeal, of which the following restated issue is dispositive: whether the trial court erroneously granted summary judgment in favor of Niece.[1]

### Facts and Procedural History

Testator and his wife resided with Helen Verdi ("Verdi") (his wife's sister) and

---

1. In addition to the above restated issue, the Verdi Estate presented the following issue on appeal: "[whether] [t]he trial court erroneously failed to grant plaintiffs' Motion to Strike hearsay statements and statements violative of the Dead Man's Statute from defendants' affidavits supporting defendants' Motion for Summary Judgment prior to ruling upon defendants' Motion for Summary Judgment." However, the facts designated by the Verdi Estate preclude the necessity of addressing the merits of this issue in order to resolve the case on appeal. Nevertheless, as this issue may resurface as a result of our reversal, we provide the following direction to the trial court regarding the issue as it pertains to the Dead Man's Statute.

Indiana Code section 34–45–2–4, otherwise referred to as the Dead Man's Statute, reads in part as follows:
(a) This section applies to suits or proceedings:
(1) in which an executor or administrator is a party;
(2) involving matters that occurred during the lifetime of the decedent; and
(3) where a judgment or allowance may be made or rendered for or against the estate represented by the executor or administrator.

(b) Except as provided in subsection (c), a person:
(1) who is a necessary party to the issue or record; and
(2) whose interest is adverse to the estate;
is not a competent witness as to matters against the estate.

The application of the Dead Man's Statute is limited to circumstances in which the decedent, if alive, could have refuted the testimony of the surviving party. *Fisher v. Estate of Haley*, 695 N.E.2d 1022, 1027 (Ind.Ct.App. 1998). The testator's soundness of mind is an exception to the application of the Dead Man's Statute. *Bechert v. Lehe*, 161 Ind.App. 454, 316 N.E.2d 394, 397 (1974).

Here, where Niece is a party, the matters involved took place in the months preceding Testator's execution of his Second Will, and a judgment will be made for or against Testator's estate, the Dead Man's Statute is applicable. Moreover, as Niece is a necessary party to the issues before the trial court and she is a devisee under Testator's second last will and testament, she is not a competent witness as to matters against the estate, with the noted exception of her testimony that bears upon Testator's soundness of mind.

her husband for his entire adult life. Following the death of Verdi's husband and the death of Testator's wife, Testator and Verdi continued to reside in the Verdi residence located in Philadelphia, Pennsylvania. On October 20, 1996, Testator executed a will ("First Will") in which he bequeathed all of his assets to his sister-in-law Verdi and named her executrix of his will.

On April 10, 1997, Niece moved Testator from Verdi's residence to Professional Care Rehabilitation Center ("Rehabilitation Center") in Dale, Indiana. Testator remained a patient at the Rehabilitation Center from April 10, 1997 until his death on December 27, 1997. On April 15, 1997, the report of John Fromme, M.S.W. ("Fromme"), indicated a diagnosis of "dementia of Alzheimer Type with late onset with depressed mood." (R. 178.) This report was co-signed by David Gray, M.D. on April 22, 1997. That same day, Niece and Chester Toon, Testator's brother, filed a petition to have a guardian appointed for Testator, citing Testator's inability "to maintain and care for his financial affairs" and Testator's "diminished mental capacity by reason of advanced age and associated physical infirmities." (R. 173, 178.)

On June 9, 1997, the trial court declared Testator incapacitated and found Niece to be the "most qualified and suitable person available to serve as guardian of his person." (R. 183.) Regarding Testator's mental capacity, the trial court ruled as follows:

1. That [Testator], due to diminished mental and physical capacity by reason of advanced age and senile dementia, is unable to care for his person and to provide self-care and is further unable to manage in whole or in part his property and is therefore adjudicated to be an incapacitated person and a guardian over his person and a guardian over his estate is necessary.

(R. 183.) The trial court further ordered that letters of guardianship to serve as guardian over Testator's estate be issued to Tell City National Bank.

On July 21, 1997, Testator was examined by Wallace Shellenberger, M.D. ("Psychiatrist"), who made the following conclusions:

If left completely on his own to deal with financial matters and even matters related to his own day to day keep he is not competent to manage these matters. . . . In my opinion because of his dementia he is easily lead [sic] and cannot easily judge when someone is seeking their own benefit and not seeking his intention. Therefore, it is very important to have someone who is very impartial work with him carefully in helping him make decisions related to the distribution of his estate.

(R. 239.)

On September 26, 1997, Testator executed a second last will and testament ("Second Will"), revoking all other wills and codicils, and devised one-half of his estate to Niece, per stirpes, and one-half to Verdi, per stirpes. The same attorney who represented Niece in the guardianship proceeding, prepared the Second Will. Testator died on December 27, 1997. On December 29, 1997, the Second Will was filed with the trial court for probate. On May 19, 1998, the Verdi Estate filed a "Will Contest" to the Second Will. Thereafter, Executrix moved for summary judgment. Following a hearing on the matter, the trial court granted summary judgment in favor of Executrix. This appeal followed.

### Discussion and Decision

The Verdi Estate contends that the trial court erroneously granted summary judgment in favor of Niece. Specifically, the Verdi Estate argues that genuine issues of material fact exist concerning the sound-

ness of mind of Testator and undue influence over Testator.[2] We agree.

### Standard of Review—Summary Judgment

Our standard of review of a summary judgment order is well-settled: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(c); *Shell Oil Co. v. Lovold Co.*, 705 N.E.2d 981, 984 (Ind.1998). Relying on specifically designated evidence, the moving party bears the burden of showing prima facie that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Interstate Cold Storage v. General Motors Corporation*, 720 N.E.2d 727, 729 (Ind.Ct.App.1999) *trans. denied*. If the moving party meets these two requirements, the burden shifts to the non-movant to set forth specifically designated facts showing that there is a genuine issue for trial. *Id.*

### Unsound Mind

Every person is presumed to be of sound mind to execute a will until the contrary is shown. *Kronmiller v. Wangberg*, 665 N.E.2d 624, 628 (Ind.Ct.App. 1996). To rebut this presumption, it must be shown that the testator lacks mental capacity at the time of executing his will to know: (1) the extent and value of his property; (2) those who are the natural objects of his bounty; and (3) their deserts, with respect to their treatment of and conduct towards him. *Id.* Moreover, it is only the testator's soundness of mind at the time of executing the will that is controlling. *Id.* Nonetheless, evidence of the testator's mental condition prior to the date of execution is admissible, as it relates to the testator's mental state when executing his will. *Id.*

In the instant case, the Verdi Estate specifically designated the following facts contesting Testator's mental capacity to execute his Second Will: (1) the report of Fromme on April 15, 1997, indicating that Testator suffered from "dementia of Alzheimer Type with late onset with depressed mood[;]" (R. 178) (2) the trial court's order appointing a guardian over Testator on June 9, 1997, which adjudicated Testator an "incapacitated person" unable to care for himself and unable to manage his property; (R. 183) and (3) Psychiatrist's conclusion on July 21, 1997, that Testator was "not competent" (R. 239) to deal with either financial matters or day to day matters. Both the content and timing of these designated facts cause them to bear on Testator's mental capacity at the time he executed his Second Will, on September 26, 1997, and thereby create a genuine issue of material fact. Accordingly, the trial court erred by granting summary judgment in favor of Niece on this issue.

### Undue Influence

The exercise of undue influence is never presumed. *Kronmiller*, 665 N.E.2d at 628. However, in a will contest, where the plaintiff establishes that: (1) a relationship of confidence and trust existed between the testator and the defendant, and (2) the defendant benefitted from the will, a presumption of undue influence arises and shifts the burden of going forward to the dominant party. *Villanella v. Godbey*, 632 N.E.2d 786, 790 (Ind.Ct.App. 1994).

Here, Niece and Chester Toon filed their petition to be appointed guardians of Testator on April 22, 1997. On June 9, 1997, the trial court appointed Niece guardian over Testator. On September 26, 1997, Testator changed his will and left one-half of his estate to Niece, and one-

**2.** The Verdi Estate also alleges fraud upon Testator. However, neither the Verdi Estate's citations to the Record, nor our independent review, reveals facts designated to the trial court in support of this contention. Consequently, we find no genuine issue of material fact regarding this issue.

half to his sister-in-law Verdi.[3] Thus, as guardian of Testator and heir to one-half of Testator's estate, Niece was both in a relationship of confidence and trust with Testator and benefitted from his Second Will. These facts, when presented alongside Psychiatrist's July 21, 1997 medical assessment that Testator, because of his dementia, "is easily lead[,] [sic]" raise a presumption of undue influence, and shift the burden of going forward to Niece. Thus, this issue must be resolved at trial, and the trial court erred by granting summary judgment.

Reversed.

SULLIVAN, J., and VAIDIK, J., concur.

**A.B., Appellant–Respondent,**

v.

---

3. Testator's First Will, dated October 20, 1996, designated Verdi as the sole heir to his estate.