William **HAYS**, Appellant–Plaintiff,

v.

Paul **HARMON**, Personal Representative of the Estate of Rains Hays, Deceased, Appellee–Defendant.

No. 13A04–0306–CV–299.

Court of Appeals of Indiana.

June 3, 2004.

---

Brent Welke, Virginia Beach, VA, for Appellant.

Derrick H. Wilson, Mattox, Mattox & Wilson, New Albany, IN, for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

William Hays ("Hays") appeals the circuit court's grant of partial summary judgments in favor of the Estate of Rains Hays ("the Estate") on two separate issues, both of which arose from the probate of Rains Hays' ("Rains") will. Because we find that Hays failed to designate evidence showing that there are genuine issues of material fact as to Rains' testamentary capacity, and because the trust provision in Rains' will—which evinced a charitable purpose and was sufficiently definite to establish the elements of a valid trust pursuant to Indiana Code § 30–4–2–1(b)—created a valid charitable trust, we affirm both partial summary judgments.

### Facts and Procedural History

Rains died in December 2000, leaving behind a last will and testament and one child, Hays. In his will, executed in February 1999, Rains bequeathed $100,000 to Hays, $500 to the Masonic Lodge No. 470, and the rest and residue of his estate, totaling nearly one million dollars, to a Trustee, Paul Harmon, to be administered as a charitable trust. The will's trust provision ("the trust provision") provides as follows:

> I give, bequeath and devise all the rest and residue of the property that I may own at the time of my death, real and personal, tangible and intangible[,] to Paul Harmon of Crawford County, Indiana, as Trustee. Paul Harmon shall hold and administer such sums as a

trust estate, and shall distribute all of the net income of the trust and so much of the trust corpus as he shall deem reasonable, to provide for poor relief to worthy and needy individuals who reside in Crawford County, Indiana, and have[,] prior to their application to the Trustee, resided in Crawford County at least six months.

Appellant's App. p. 84.

Trustee Paul Harmon became acquainted with Rains when Harmon purchased Rains' farm sometime around 1993. In 1995, Harmon began spending more time on the farm assisting and preparing meals for Rains. And in February 1999, at Rains' request, Harmon drove Rains to the law office of J.C. Tucker to execute his last will and testament.

After Rains' death, Harmon, who was also named as Executor, filed a Petition for Probate of Will in the Crawford Circuit Court in January 2001 (Cause No. 13C01–0101–EU–003; "the Estate case"). Hays subsequently filed a will contest action against all beneficiaries and trustees named in the will, including "Paul Harmon, individually and as Personal Representative of the Will of Rains G. Hays" (Cause No. 13C01–0106–CP–066; "the Hays case"). Appellant's App. p. 17. In his complaint, Hays alleged that Harmon exercised undue influence over Rains and that Rains lacked testamentary capacity at the time the will was executed.[1]

In September 2001, Harmon, as Trustee, adopted and tendered to the Internal Revenue Service (IRS) Trust By–Laws, which clarify various aspects of the Rains G. Hays Testamentary Trust's administration.

The Estate and Hays each filed a motion for partial summary judgment on the issue of whether the trust provision established a valid charitable trust. As a practical matter, the Estate case and the Hays case were consolidated for argument but not for trial.[2] A hearing was held, and the circuit court granted the Estate's motion, finding that Rains' will created a valid charitable trust because the trust provision established all six statutory elements of a valid trust.[3]

The Estate filed another motion for partial summary judgment, this time urging the circuit court to find that Rains had testamentary capacity at the time he executed his will and designating with specificity twelve affidavits and three depositions in support of this motion. Hays responded to the Estate's motion with a brief in which he argues what he calls the "credibility issues" of the Estate's affiants—"The issue is not the weight of the paper but the weight of the testimony."—and designates the following materials in support of his position: any and all documents designated or referred to by the Estate in its motion, excerpts from depositions of Harmon and Hays, Hays' original and amended complaints, and support-

---

1. In this appeal, Hays presents no cogent argument that Harmon exercised undue influence over Rains. Thus, he has waived review of this issue. *See* Ind. Appellate Rule 46(A)(8).

2. Technically, both of the Estate's motions for partial summary judgment were filed under the cause number of the Estate case but this appeal was brought under the cause number of the Hays case.

3. Indiana Code § 30–4–2–1(b) provides: "Except as required in the applicable probate law for the execution of wills, no formal language is required to create a trust, but its terms must be sufficiently definite so that [1] the trust property, [2] the identity of the trustee, [3] the nature of the trustee's interest, [4] the identity of the beneficiary, [5] the nature of the beneficiary's interest and [6] the purpose of the trust may be ascertained with reasonable certainty."

ing affidavits. Appellant's App. p. 74. Hays also moved for leave to file belatedly an affidavit of Hays himself. During a hearing on the Estate's motion for partial summary judgment, the Estate orally moved to strike Hays' response to its motion on the grounds that Hays' response was not timely, contained hearsay, and was not properly designated. Following the hearing, the circuit court granted the Estate's motion for partial summary judgment—finding that no issues of material fact existed as to whether Rains had testamentary capacity at the time he executed his will—but denied the Estate's oral motion to strike Hays' response. Hays now appeals both partial summary judgments.

### Discussion and Decision

Hays contends that the circuit court erred in granting the Estate's motions for partial summary judgment on both Rains' testamentary capacity and the validity of the charitable trust. In particular, Hays argues that Rains lacked testamentary capacity at the time he executed his will and that the trust provision in Rains' will did not meet the statutory requirements for a valid trust—charitable or otherwise. We consider each issue in turn.

In reviewing the circuit court's entry on a summary judgment motion, we apply the same standard of review used in the circuit court: we must decide whether there is a genuine issue of material fact that precludes summary judgment and whether the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Birch v. Midwest Garage Door Sys.*, 790 N.E.2d 504, 509 (Ind.Ct.App.2003). Once the moving party has sustained its initial burden of proving the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law, the party opposing summary judgment must respond by designating specific evidence establishing a genuine issue for trial. *Birch*, 790 N.E.2d at 509.

In ruling on a motion for summary judgment, the circuit court may consider only properly designated evidence that would be admissible at trial. *Kronmiller v. Wangberg*, 665 N.E.2d 624, 627 (Ind.Ct. App.1996). Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Ind. Trial Rule 56(E). The party offering a deposition into evidence bears the burden of establishing its admissibility. *Clark v. Sporre*, 777 N.E.2d 1166, 1171 (Ind.Ct. App.2002). Objection may be made at the hearing on a motion for summary judgment to receiving in evidence any depositions or part thereof for any reason that would require the exclusion of the evidence if the witness were then present and testifying. Ind. Trial Rule 32(B).

With regard to the validity of the trust, the circuit court issued findings of fact and conclusions of law in support of its summary judgment for the Estate. In the summary judgment context, we are not bound by the circuit court's specific findings of fact and conclusions thereon. *Birch*, 790 N.E.2d at 509. They merely aid our review by providing us with a statement of reasons for the circuit court's actions. *Id.*

### I. Testamentary Capacity

Hays contends that Rains lacked testamentary capacity at the time he executed his will. Every person is presumed to be of sound mind to execute a will until the contrary is shown. *Estate of Verdi v. Toland*, 733 N.E.2d 25, 28 (Ind.Ct.App. 2000), *reh'g denied.* To rebut this presumption, it must be shown that the testator lacks mental capacity at the time of executing his will to know: (1) the extent

and value of his property; (2) those who are the natural objects of his bounty; and (3) their deserts, with respect to their treatment of and conduct toward him. *Id.* It is the testator's soundness of mind at the time of executing the will that is controlling; nonetheless, evidence of the testators mental condition prior to the date of execution is admissible, as it relates to the testators mental state when executing his will. *Id.*

In moving for partial summary judgment on this issue, the Estate had the burden of showing by designated evidentiary materials that there is no genuine issue of material fact as to Rains' testamentary capacity at the time he executed his will. To prove the absence of a genuine issue of material fact as to Rains' testamentary capacity, the Estate attached to its motion twelve affidavits and three depositions and directed the circuit court to the specific relevant paragraphs of each affidavit and deposition. The Estate's affidavits were of Rains' long-time neighbors, bank advisors, physician, tax preparer, and attorney; the depositions were of Harmon and Hays. The affidavits collectively depict Rains as an opinionated, thrifty, nearly deaf man who maintained friendships with his neighbors—with whom he discussed politics, current events, and financial matters—until the end of his life, but who had a strained relationship with his only son. Neighbor Earl Luttrell stated, "In over 30 years of being around [Rains], I saw his son twice." Appellant's App. p. 56.

In affidavits of the professionals in Rains' life, Rains is described as opinionated and very knowledgeable about his personal finances. Thomas J. Krodel, Vice President–Senior Trust Advisor of Old National Trust Company, stated that until Rains' death, Rains "was well aware of his investments and [the bank's] strategy for investing his money" and "seemed knowledgeable about his affairs and was able to respond to questions about the nature of his assets . . . ." Appellant's App. p. 68. Leroy Schaefer, M.D., who took care of Rains for several years prior to his death, stated that he did not believe Rains was incompetent in 1999. Appellant's App. p. 69. James C. Tucker, the attorney who prepared Rains' will, stated that Rains "knew exactly what he had in terms of financial wherewithal and had a definite plan for what he wanted to do with his monies." Appellant's App. p. 71. This evidence was sufficient for the Estate to make its required showing that there are no genuine issues of material fact as to Rains' testamentary capacity. In order for this Court to reverse the circuit court's partial summary judgment in favor of the Estate, we must find that Hays rebutted the presumption of the testator's soundness of mind—bolstered in this case by the Estate's evidentiary materials—by specifically designating to the circuit court evidence that raises a genuine issue of material fact.

 In support of his contention that Rains lacked testamentary capacity, Hays submitted a brief to the circuit court in which he cites primarily to statements he made during his own depositions. But most of Hays' statements that are available for our review are hearsay.[4] Because

---

4. To cite but one example of hearsay—taken from Hays' Deposition I—designated by Hays:
 [Hays]: And another thing is as different doctors have talked about, you know, him being senile and having dementia and that type of thing—
 Q: Who told you that?

[Hays]: Well, the latest was—well, actually might have even been—Tucker might have been last. But the—the—where I heard the specific word dementia was from the head nurse at the Huntingburg Convalescent Center.
Q: And that would have been in '99, 2000?

the court may consider only admissible evidence when ruling on a motion for summary judgment, inadmissible hearsay statements cannot create a genuine issue of material fact.[5] *See Kronmiller*, 665 N.E.2d at 627. Thus, it appears that the only admissible evidence submitted by Hays that is relevant to Rains' testamentary capacity and included in the record on appeal is Hays' claim that Rains "had periods of time where he was zoned out" or behaved in a paranoid manner for "up to an hour a day." Appellant's App. p. 95–96. This claim alone—absent an indication that the alleged episodes of zoning out and paranoia occurred at or before the time of the execution of the will—is insufficient to raise a genuine issue of material fact as to Rains' testamentary capacity. Furthermore, even if the alleged episodes of zoning out and paranoia *had* occurred at or before the time of execution, those episodes alone would not be enough to invalidate Rains' will if the episodes did not affect his making of the will and disposition of his property: " 'Unless the failure of understanding be quite total, reaching to the testator's forgetfulness of his immediate family and property, he is not disqualified from making a will,' for the weak and aged must be accorded the same rights as the strong-minded to dispose of their property." *Farner v. Farner*, 480 N.E.2d 251, 259 (Ind.Ct.App.1985) (quoting *Bundy v. McKnight*, 48 Ind. 502, 514 (1874)). Because none of the admissible evidence designated by Hays in his brief to the circuit court raises a genuine issue of material fact as to Rains' testamentary capacity, we affirm the circuit court's grant of partial summary judgment for the Estate on this issue.

## II. Validity of the Trust

▮▮ Hays also contends that the trust provision in Rains' will did not create a valid trust because the terms were not

---

[Hays]: That would have been in '99, yeah.

Q: What professionals, nurses, doctors have told you that your dad had dementia aside from this head nurse?

[Hays]: I'm not sure anyone used that specific word.

Q: Anyone ever say your dad was crazy who was a professional?

[Hays]: A lot of people have said that. There was a doctor in Paoli back in the late 80s that [Rains] used to go to, he and mom went to. And mom and dad were both saying certain things that they observed in the other, so when I'd go with one, I'd ask the doctor about the other. And I don't remember the words, but I know the conversation led one to believe that there were problems, mental problems with both of them at the time....

Q: And the doctor was who?

[Hays]: I do not recall the doctor's name. In his brief to the circuit court, Hays designates this excerpt from his deposition (p. 79, line 15 to p. 80, line 22) to support the following contention: "A jury may also believe the testimony of either Mr. Hays or caregivers or the representatives of record showing that [Rains] had mental problems going back into the 1980s." Appellant's App. p. 76. The excerpt quoted above is characteristic of the portions of Hays' depositions included in the record on appeal.

5. At the hearing on this issue, the Estate orally moved to strike Hays' entire response on the grounds that the response was untimely in violation of Indiana Trial Rule 56. The Estate argued further that Hays' evidentiary materials were not properly designated and consisted primarily of inadmissible hearsay. The circuit court denied the motion to strike Hays' response but did not provide reasoning to support the denial. A circuit court has broad discretion in refusing to grant a motion to strike, and the court's decision will not be reversed unless prejudicial error is clearly shown. *In re the Estate of Meyer*, 747 N.E.2d 1159, 1164 (Ind.Ct.App.2001). We will not disturb the denial of the motion to strike here since neither party has shown prejudicial error. Nonetheless, to the extent the circuit court considered inadmissible hearsay evidence in deciding whether Hays' response raised a genuine issue of material fact, it erred in doing so.

sufficiently definite to satisfy the requirements of Indiana Code § 30–4–2–1(b). The Estate argues—and the circuit court found—that Rains' will created a charitable trust. "Charitable trust" means a trust in which all the beneficiaries are the general public or organizations, including trusts, corporations, and associations, and that is organized and operated wholly for religious, charitable, scientific, public safety testing, literary, or educational purposes. Ind.Code § 30–4–1–2(5). "A charitable purpose includes, but is not limited to, the relief of poverty and the benefitting of the unfortunate." 5 ILE *Charities* § 5 (1999). A charitable trust is a favorite of the law, and the most liberal rules of construction will be employed to sustain and uphold every attempt of a person to donate his property to a charitable use. *Barr v. Geary*, 82 Ind.App. 5, 142 N.E. 622, 627 (1924). The charitable character of the trust being made apparent, all doubts are to be resolved in its favor. *Id.*

Initially, we must determine whether the Indiana Trust Code governs charitable trusts.[6] This Court has not had occasion to consider this particular question until today. We now find that it is abundantly clear from the Trust Code Study Commission Comments and the text of the Trust Code itself that charitable trusts—including the somewhat anachronistic type of charitable trust at issue in this case—are governed by the Trust Code. Since its enactment in 1971, the Trust Code Study Commission Comments to the Indiana Code § 30–4–1–1[7] have included the following statement: "The rules of law in this code apply only to personal trusts.[8] Personal trusts include those which may be created for either private or charitable purposes." I.C. § 30–4–1–1(c) cmt. One comment to Indiana Code § 30–4–2–1(b)— the subsection that contains the six requisite elements of valid trusts—states that this subsection "retains the existing law." Ind.Code § 30–4–2–1(b) cmt. Another comment to the same subsection reads, "A charitable trust will be enforceable if the specific object of the charity is named although the beneficiaries are uncertain in number and identity." I.C. § 30–4–2–1(b) cmt. (citing *Ackerman v. Fichter*, 179 Ind. 392, 101 N.E. 493 (1913)).

Effective July 1, 2000, the legislature created two categories of charitable trusts, which are both defined within the Trust Code. Ind.Code § 30–4–1–2(5), (17). As explained in Henry's Indiana Probate Law and Practice, these two categories of charitable trusts were created for pur-

---

**6.** The Estate cites Indiana Code § 30–4–1–1 in support of its assertion that the Trust Code may not even apply to a charitable trust such as the one created in Rains' will. Presumably, the Estate believes that the trust provision will not need to establish the six statutory elements of a valid trust if the Trust Code does not apply. But the subsection to which the Estate refers was amended in 2000, and in any event, the quoted portion referred not to charitable trusts but to "non-profit charitable foundations, corporations or other associations." Appellee's Br. p. 11 (citing former Ind.Code § 30–4–1–1(6)).

**7.** Indiana Code 30–4–1–1 defines "trust" and lists "relationships excluded from [the Trust Code]." These excluded relationships include

trusts created by operation of law, business trusts, and "religious, educational, and cultural institutions, created in other than trust form...." Ind.Code § 30–4–1–1(a), (b).

**8.** Different sources state different general principles with regard to the Trust Code's applicability. For instance: "Express trusts, but not implied trusts, are governed in Indiana by the Indiana Trust Code." 28 ILE *Trusts* § 3 (citing Ind.Code § 30–4–1–1); "Since this was a valid testamentary trust, the Trust Code is applicable." *In re the Carl F. Bettner Trust*, 495 N.E.2d 194, 196 (Ind.Ct. App.1986). We therefore note that the charitable trust at issue qualifies as a personal, express, testamentary charitable trust.

poses of applying the Trust Code; the primary substantive effect of the creation of these two categories was the simultaneous enactment of new rules within the Trust Code regarding trust accountings. *See* Ind.Code § 30–4–5–12; 3A John S. Grimes, *Henry's Indiana Probate Law and Practice* § 56 (Supp.2003). Because we find as a matter of law that the Indiana Trust Code governs charitable trusts, the trust provision must satisfy the requirements of Indiana Code § 30–4–2–1(b) in order to be a valid charitable trust.

Indiana Code § 30–4–2–1(b) states that the terms of a trust "must be sufficiently definite so that the trust property, the identity of the trustee, the nature of the trustee's interest, the identity of the beneficiary, the nature of the beneficiary's interest and the purpose of the trust may be ascertained with reasonable certainty." Hays concedes that the trust provision of Rains' will satisfies two of the statutory requirements—the trust property and the trustee are clearly identified—but argues that the trust provision cannot satisfy the other four requirements. We must consider, therefore, whether the trust provision satisfies the other four requirements of a valid charitable trust.

■ A trustee's title to trust property extends only as far as necessary to enable him to perform his duties under the trust. *See* Ind.Code § 30–4–2–6; 28 ILE *Trusts* § 33 (1999). Here, the trust provision states, "I give, bequeath and devise all the rest and residue of the property that I may own at the time of my death ... to Paul Harmon ... as Trustee ... [who] shall hold and administer such sums as a trust estate, and shall distribute all of the net income of the trust and so much of the trust corpus as he shall deem reasonable...." Appellant's App. p. 22. The nature of Harmon's interest, then, is clear: he takes title to the "rest and residue" of

Rains' estate but only to the extent necessary to enable him to perform his duties under the trust. Harmon has already begun to perform these duties by establishing the By–Laws of the Rains G. Hays Testamentary Trust. The By Laws clarify various aspects of Harmon's trust administration duties, including prohibited transactions and investment of trust assets. We find the trust provision is sufficiently definite that the nature of Harmon's interest may be ascertained with reasonable certainty.

■ Next we consider the beneficiaries. "A trust beneficiary is the person named, or a member of the class designated, in the terms of the trust for whose benefit the title to the trust property is held and for whom the trust is to be administered." *See* Ind.Code §§ 30–2–14–2, 30–4–1–2(3); 28 ILE *Trusts* § 15 (1999). The designation of beneficiaries as a class may be sufficiently certain to uphold the trust. 28 ILE *Trusts* § 27 (1999). Moreover, that the trustee is given complete discretion in the selection of beneficiaries from the class named will not invalidate the trust. *Hulet v. Crawfordsville Trust Co.*, 117 Ind.App. 125, 69 N.E.2d 823, 825 (1946). A charitable trust will be enforceable if it names trustees capable of designating the expenditures and the specific object of the charity, although the beneficiaries are uncertain in number and identity. *Ackerman*, 101 N.E. at 495. For example, Indiana courts have upheld the following devises as sufficiently definite: to county commissioners of Lagrange County "in trust and for the use and benefit of the orphan poor, and for other destitute persons of said county...." *Bd. of the Comm'rs of Lagrange County v. Rogers*, 55 Ind. 297, 299 (1876); to named persons as trustees to be applied "[t]o poor families, widows, and orphans; newcomers in distress, or persons

in Vanderburgh county suffering from want of clothing, food or fuel, especially in the winter . . . ." *Erskine v. Whitehead,* 84 Ind. 357, 359–60 (1882); to trustees "for the sole relief and benefit of poor widows over the age of fifty years, of irreproachable character, who have resided, not under three years, within eight miles of the town of Winslow, and who have no certain income . . . ." *De Bruler v. Ferguson,* 54 Ind. 549, 553 (1876).

Here, the trust provision directs Harmon to administer the trust "to provide for poor relief to worthy and needy individuals who reside in Crawford County, Indiana, and who have, prior to their application to the Trustee, resided in Crawford County at least six (6) months." Appellant's App. p. 22. As stated in *Hulet,* "The members of that class are definitely ascertainable and are always with us." 69 N.E.2d at 825. Thus, although the specific number and identity of individuals who will benefit from the charitable trust is uncertain, the trust provision nonetheless satisfies the requirement that the identity of the beneficiary be ascertainable with reasonable certainty.

■■■ As to the beneficiaries' interest, the nature of this interest is to be determined from the terms of the trust. *See* Ind.Code § 30–4–2–7. In the case of a charitable trust, however, an otherwise indefinite devise is sufficiently ascertained if the trustee is empowered to devote the fund in such manner as he deems just and the purpose is not unlawful or against public policy. *Ackerman,* 101 N.E. at 497. Here, Harmon was given the discretion to hold and administer the trust estate "as he shall deem reasonable." Appellants App. p. 22. In accordance with that power, Harmon set forth the terms of the distribution to charity in the By–Laws. The requirement that the nature of the benefi-

ciaries interest be ascertainable is satisfied.

■■■ Finally, we look to the purpose of the trust. The trust provision explicitly states that the trust is intended "to provide for poor relief." Appellants App. p. 22. That the testator, after creating a trust for a charitable use and defining the intention of the trust, empowered the trustee to select some of the purposes of the charity will not invalidate the trust. *Hulet,* 69 N.E.2d at 825. Harmon has been entrusted with holding and distributing the trust estate by means consistent with Rains' unambiguously charitable intent. This is enough to satisfy the requirement that the purpose of the trust may be ascertained with reasonable certainty.

Because the trust provision in Rains' will evinced a charitable purpose and was sufficiently definite to ascertain with reasonable certainty the six elements of a valid trust pursuant to Indiana Code § 30–4–2–1(b), the trust provision created a valid charitable trust. We affirm the circuit court's grant of partial summary judgments for the Estate, finding that Rains had testamentary capacity at the time he executed the will that gave life to a valid charitable trust.

Affirmed.

SHARPNACK, J., and MATHIAS, J., concur.