**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 14 2012, 9:25 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CURTIS E. SHIRLEY**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:

**RICHARD T. MULLINEAUX**
**CRYSTAL G. ROWE**
Kightlinger & Gray, LLP
New Albany, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAMES ARTHUR, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 22A01-1107-PL-326 |
| | ) | |
| MICHAEL F. WARD as Personal Representative | ) | |
| of the Estate of Judith A. Arthur and | ) | |
| DELBERT N. ARTHUR III, Individually, | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE FLOYD CIRCUIT COURT
The Honorable J. Terrence Cody, Judge
Cause No. 22C01-1002-PL-343

**February 14, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-plaintiff James Arthur appeals from the trial court's grant of summary judgment in favor of appellees-defendants, Michael F. Ward as Personal Representative of The Estate of Judith A. Arthur and Delbert Arthur III, individually, (collectively, "the Appellees"). More particularly, James argues that the trial court erred by crediting the testimony of physicians offered by the Appellees when the factfinder is entitled to decide whose evidence is more compelling regarding whether his mother was of sound mind at the time she executed her will. Additionally, James contends that, because Delbert's attorneys drafted Judith's will, disinheriting James, Delbert is required to disprove constructive fraud and undue influence by clear and convincing evidence. Finally, James maintains that his affidavit stating that, in his opinion, his mother did not sign the contested documents was sufficient to overcome summary judgment.

Concluding that James designated sufficient evidence to create a genuine issue of material fact regarding his mother's testamentary capacity, but finding no other error, we affirm in part, reverse in part, and remand with instructions that the underlying litigation continue regarding testamentary capacity.

## FACTS

### A. Background

Judith Arthur was James's and Delbert's mother. On April 10, 2009, Judith executed her Last Will and Testament (the "Will") devising the aggregate sum of $4,000 to James's children, her grandchildren, and the remainder of her estate to Delbert. With

regard to James, the Will contains a specific provision disinheriting him. On June 23, 2009, Judith signed deeds conveying real property to Delbert.

Delbert lived with Judith following the death of her husband in November 2008 until her death on January 15, 2010. Since January 2008, Delbert was also Judith's attorney-in-fact. Carolyn Sowers is Judith's younger sister and her successor attorney-in-fact.

### B. Proceedings Below

On February 2, 2010, less than one month after Judith's death, the trial court admitted the Will to probate. On February 19, 2010, James filed a complaint against Delbert contesting the Will and for conversion. The trial court in the estate matter subsequently named a local attorney, Michael F. Ward, as special administrator of the estate.

On August 27, 2010, the Appellees filed a motion for summary judgment with designated evidence and memorandum in support. On October 27, 2010, James filed his response, designated material facts in dispute, and an appendix of evidence. Two days later, on October 29, 2010, James requested leave to supplement with an affidavit from one of Judith's doctors, Dr. Kristie Paris. In the affidavit, Dr. Paris stated that, in her opinion, Judith was not of sound mind when she signed the Will. Appellant's App. p.

3

357. On November 8, 2010, the Appellees moved to strike it.[1] On December 28, 2010, the trial court denied the Appellees' motion for summary judgment.

` After the Appellees deposed Dr. Paris, she recanted her affidavit and on February 25, 2011, the Appellees moved to reconsider the trial court's order denying summary judgment. James filed his initial response on March 6, 2011.

On March 17, 2011, the trial court treated the Appellees' motion to reconsider as a new motion for summary judgment. On June 6, 2011, James filed his response, stating that even if Dr. Paris's affidavit was struck, "several lay witnesses and the medical records show her confusion, depression, disorientation, cognitive problems, memory problems, memory loss, failed mini-mental status examination, Alzheimer's, dementia, wide-spread cancer, and strokes." Appellant's App. p. 455. The lay witnesses included James and his wife, Laura, as well as his attorney in another matter, Jerry Ulrich. Ulrich had deposed Judith five days after she had executed the Will, and he stated that based on his observations, she was confused, disoriented, and had memory problems and that she did not possess the soundness of mind to sign an estate planning document. James maintained that these facts create a question of fact regarding whether Judith was of sound mind when she signed the Will.

On June 7, 2011, the Appellees replied that "no affiant, other than the physicians who gave affidavits for the [Appellees], can testify to Judith Arthur's competency in light of her medical condition." Id. at 459 (emphasis in original). Moreover, the Appellees

---

[1] Although the trial court never signed a written order on this motion, the trial court subsequently told the parties that it considered the belated affidavit in denying the motion for summary judgment.

4

maintained that the issue of undue influence is linked to competence and pointed out that Dr. Ben Schoenbachler and Dr. Jennifer Walden-Fain submitted affidavit testimony that supports the Appellees' assertion that Judith was not acting under undue influence when she executed the Will.

On July 7, 2011, the trial court reversed its prior decision and granted the Appellees' motion for summary judgment, concluding that "the Court's denial of [the Appellees'] original Motion for Summary Judgment was based solely on the affidavit of Kristie Paris, M.D., which has since been retracted and disavowed." Id. at 465. James now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

James appeals from a grant of summary judgment in favor of the Appellees. When reviewing a grant of summary judgment, we apply the same standard as the trial court, namely, summary judgment should be granted only if the designated evidence demonstrates that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Scribner v. Gibbs, 953 N.E.2d 475, 479 (Ind. Ct. App. 2011); see also Ind. Trial Rule 56(C). Additionally, we must construe all factual inferences in favor of the nonmoving party, and all doubts as to the existence of a material issue must be resolved against the moving party. Id. Once the moving party has sustained its initial burden of proving the absence of a genuine issue of material, the party opposing summary judgment must respond by designating specific evidence establishing

5

a genuine issue of material fact.  Hays v. Harmon, 809 N.E.2d 460, 464 (Ind. Ct. App. 2004).

## II. Testamentary Capacity

James argues that summary judgment was inappropriate because there are genuine issues of material fact regarding whether Judith was of sound mind when she executed the Will.  Put another way, James contends that it is a question of fact whether Judith lacked testamentary capacity when she executed the Will.

Every person is presumed to be of sound mind to execute a will.  Id.  To rebut this presumption, it must be shown that the testator lacked the mental capacity to know: (1) the extent and value of her property; (2) those who are the natural objects of her bounty; and (3) their deserts, with respect to their treatment of and conduct towards her.  Id. at 464-65.  It is the testator's mental capacity at the time the will is executed that is controlling; however, evidence of the testator's mental condition before the date of execution is admissible, inasmuch as it relates to the testator's mental state at the time she executed the will.  Id. at 465.

As stated above, in moving for summary judgment, the Appellees had the burden of designating evidence showing that there were no genuine issues of material fact regarding Judith's testamentary capacity at the time she executed the Will.  To prove this, the Appellees designated the affidavit of Michael G. Naville, who prepared the Will and stated that he reviewed the Will with Judith and that she confirmed that it reflected her wishes and that he witnessed her execute the Will outside the presence of Delbert.

6

Appellant's App. p. 68-70. Naville also stated that, based on his meetings with Judith, she was aware of the value of her estate, could identify family members, and knew what she wanted each of those people to receive in light of their treatment of her. Id. The affidavit of Donna Travis, Naville's legal assistant, reflected similar information.

Naville requested that Dr. Walden-Fain evaluate Judith before she executed the Will in anticipation that James would contest the Will. In Dr. Walden-Fain's affidavit, she stated that Judith had been her patient for approximately ten years at the time of her death. In a letter addressed to Naville and attached to her affidavit, Dr. Walden-Fain stated that in her opinion, Judith was "competent to make legal decisions regarding her estate." Id. at 82. The letter also stated that Judith's primary problem was expressive aphasia, which means that "while her memory and thought processes remain intact she has difficulty expressing it. Sometimes the wrong word will come out of her mouth or she will stutter and stop speaking searching for the right word to use." Id.

The Appellees also submitted the affidavit of Dr. Schoenbachler, who was Judith's doctor in 2009. In Dr. Schoenbachler's opinion letter, dated April 16, 2009, he stated that although Judith "does have a certain degree of dementia, most prominently affecting expression of language, she appears to have the decisional capacity to designate a power of attorney and direct the proceedings of a will." Appellant's App. p. 89.

In response, James offered excerpts of Judith's medical records. The first excerpt is from August 2008 and states that Judith scored "very low" on the mini mental status exam. Id. at 171. More particularly, she could remember only one of three objects

7

immediately "and really none at 5 minutes." Id. She could not spell the word "world" forwards or backwards and could not complete a series of three commands. The second excerpt is from September 2008 and noted that Judith had some memory loss and that she was starting B12 shots to address her history of "white matter disease and infarcts." Id. at 174.

The third is from March 2009 indicating that Judith's expressive aphasia "has gotten gradually worse over the past one year and she is now trying to write a will." Appellant's App. p. 213. It also stated that "[r]egarding her competence to make a will, she can tell me her family's names and express a concern she has about one son getting some of her possessions, and she does not want him to." Id.

The fourth medical record excerpt was a psychiatric evaluation performed by Dr. Ben Schoenbachler on April 16, 2009. Dr. Schoenbachler noted that when Judith was asked to point to the ceiling or the floor, she looked as though she did not know what pointing meant. When she was shown a sign that said "Close your eyes," she did not understand that it was a command. Id. at 253. Additionally, Judith could not spell "Judy" or "World," and she had poor repetition and ability to recall. Id. at 254. When asked to write a sentence, she wrote "Treacipp Bine." Id.

James also designated the document wherein Judith granted power of attorney to Delbert and the petition for order of protection, indicating that Delbert had signed it as power of attorney for Judith. Additionally, James submitted Judith's April 15, 2009, deposition in the protection order matter, during which she demonstrated difficulty

8

answering questions. For instance, when trying to describe the incident where James threatened Delbert with a bullet, Judith used the word "billet." Id. at 237. Judith also had trouble recalling the names of her doctors and various dates and had difficulty answering questions.

Ulrich, James's attorney in the protective order matter, took Judith's deposition and submitted an affidavit in this proceeding stating that "[b]ased upon my observations of her general demeanor, her interaction with her own counsel and her answers to my questions, Mrs. Arthur appeared confused, and disoriented and had significant problems with both her short term and long term memory." Appellant's App. p. 247. Ulrich also stated that on April 20, Judith did not remember meeting him on April 15. Ulrich concluded that Judith did not have the soundness of mind to sign a will and that he would neither have drafted nor witnessed such a document. Id. at 248. Although the April 15 deposition occurred five days after Judith executed the Will, it is not so far removed to be of no relevance.

James and Laura both submitted affidavits indicating that Judith's mental capacity had deteriorated since her husband's death in 2008. More particularly, they stated that Judith exhibited poor hygiene, threw away a $15,000 check, was unable to properly manage her money, could not remember to take her medications correctly, allowed food to burn on the stove, put items in the refrigerator that did not belong there, and misplaced various items.

9

The Appellees argue that because James did not designate expert medical testimony, he failed to rebut the presumption that Judith possessed testamentary capacity at the time she executed the Will. The Appellees claim that her medical condition "hindered her ability to communicate her thoughts and ideas and would likely mislead an unknowing lay person to believe that Judith is incompetent, when – in reality – her mind is sharp." Appellees' Br. p. 28.

We think that the Appellees assertions prove too much. Specifically, we cannot agree that expert testimony was required under these circumstances, particularly during the summary judgment stage when all reasonable inferences are construed in favor of the nonmoving party. As discussed above, James designated four excerpts from Judith's medical records demonstrating that Judith suffered from substantial cognitive and neurological deficiencies that were continually getting worse with time. And while the doctors from whom these excerpts were generated averred that Judith was of sound mind to execute a will despite these deficiencies, an attorney who had the opportunity to depose Judith outside the context of this will contest stated otherwise.

To be clear, we are not saying that Judith did not possess testamentary capacity at the time she executed the Will; we are simply saying that James designated enough evidence to create a genuine issue of material fact. Accordingly, whether Judith possessed testamentary capacity at the time she executed the Will is for the factfinder to determine, and summary judgment is inappropriate.

James argues that the Will is invalid because Delbert exerted undue influence over Judith. The nuances of James's argument are somewhat convoluted. James points out that while representing Judith, the law firm of Lorch & Naville drafted a power of attorney naming Delbert as Judith's attorney-in-fact. Then, Lorch & Naville filed a complaint for Judith against James, which Delbert signed as her power of attorney. Then, while representing Delbert individually, Lorch & Naville filed a complaint against James. James highlights the fact that when the Will was signed on April 10, 2009, disinheriting him, "Lorch & Naville represented both Judith and the new sole beneficiary, Delbert. It was five days later that the law firm withdrew as Delbert's attorney – but the disputed document had already been signed." Appellant's Br. p. 27.

James then contends that if Delbert had drafted and witnessed a will disinheriting James, Indiana law would shift the burden to Delbert to disprove constructive fraud and undue influence by clear and convincing evidence. James maintains that the same rule should apply when Delbert's attorneys drafted and witnessed the Will, which disinherited James.

A will may be declared invalid if undue influence has been placed on the testator. Undue influence is "the exercise of sufficient control over the person, the validity of whose act is brought into question, to destroy his free agency and constrain him to do what he would not have done if such control had not been exercised." In re Estate of Compton, 919 N.E.2d 1181, 1185-86 (Ind. Ct. App. 2010), trans. denied. "Indiana

11

recognizes certain legal and domestic relationships that raise a presumption of trust or confidence as to the subordinate party on the one hand and a corresponding influence as to the dominant party on the other." Id. at 1186. And there is Indiana law that a power of attorney creates a fiduciary relationship which establishes the presumption of undue influence. Id. (citing to Nichols v. Estate of Tyler, 910 N.E.2d 221, 229 (Ind. Ct. App. 2009) (recognizing presumption of undue influence because of the fiduciary relationship that results from being someone's attorney-in-fact)).

However, in 2005 Indiana Code section 30-5-9-2(b) was amended to change the presumption of undue influence. Id. Under Indiana Code section 30-5-9-2(b), a gift from a principal to an attorney-in-fact does not create a presumption of undue influence if the attorney-in-fact did not use the power of attorney (sign on the principal's behalf) with regard to the transaction. Estate of Compton, 919 N.E.2d at 1187. Here, because Judith executed her own Will – it was not signed by Delbert as power of attorney – there is no presumption that Delbert exercised undue influence over his mother with respect to the execution of the will.

As for James's argument that a presumption of undue influence existed because Lorch & Naville represented Delbert when he sought a protective order against James and drafted and witnessed the execution of Judith's Will, we cannot agree. The protective order and the execution of the Will were separate matters involving separate clients. Accordingly, James's reasoning that attorneys bind their clients so that the actions of Lorch & Naville in preparing and witnessing the Will should be viewed as

12

Delbert's actions because they were representing him in the protective order matter is misplaced, insofar as attorneys may bind their clients for the actions they complete for that client. Here, the Will was not drafted for Delbert, but rather, for Judith, which she executed on her own behalf.

Moreover, in March and April 2009, Judith told Sowers, her attorney and his assistant, and her doctors that she wanted her estate to go to Delbert and, further, that she did not want any of her estate to go to James. The evidence also establishes that Delbert was not with Judith when she spoke with Sowers or her doctors, and he was not with her when she met with her attorney on March 4, 2009. Perhaps most compelling, Delbert was not with Judith when she executed the Will. Under these circumstances, James has failed to show that the trial court erred by granting summary judgment on this issue.

<u>IV. Judith's Signature on Documents</u>

James argues that there is a genuine issue of material fact as to whether Judith signed the Will and the deeds. James designated his affidavit stating that the signature on these documents was not his mother's, and he claims that this is sufficient under Indiana Evidence Rule 901(b)(2) to preclude summary judgment.

As an initial matter Rule 901(b)(2) addresses a non-expert's ability to authenticate documents by testifying regarding the genuineness of handwriting. James, however, is trying to assert the opposite – that Judith's signatures are not authentic. Therefore, Rule 901(b)(2) is inapplicable.

13

Moreover, the statutes regarding will executions and self-proving clauses provide that they "shall be construed in favor of effectuating the testator's intent to make a valid will." Ind. Code §§ 29-1-5-3(e), -3.1(e). Here, and in addition to the Will's self-proving clause, Attorney Naville and his assistant witnessed Judith sign and acknowledge the Will. In light of these facts, James's speculation that his Mother did not sign any of the documents is insufficient to create a genuine issue of material fact, and we affirm the trial court's grant of summary judgment on this issue.

The judgment of the trial court is affirmed in part and reversed in part and remanded for continuation of the underlying litigation regarding Judith's testamentary capacity.

DARDEN, J., and BAILEY, J., concur.