# FOR PUBLICATION



FILED

Aug 29 2013, 5:35 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**D. ERIC NEFF**
Crown Point, Indiana

ATTORNEY FOR APPELLEES:

**ROBERT G. BERGER**
Highland, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE TRUST OF DOROTHY RHOADES | ) | |
| | ) | |
| | ) | |
| ROBERT KUTCHINSKI and | ) | |
| SHELIA GRAVES, | ) | |
| f/k/a SHELIA KUTCHINSKI, | ) | |
| | ) | |
| Appellants-Petitioners, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1206-TR-296 |
| | ) | |
| JOSEPH STRAZZANTE and | ) | |
| MONTY STRAZZANTE, CO-TRUSTEES, | ) | |
| | ) | |
| Appellees-Respondents. | ) | |

APPEAL FROM THE LAKE CIRCUIT COURT
The Honorable George C. Paras, Judge
Cause No. 45C01-1009-TR-9

**August 29, 2013**

**OPINION – FOR PUBLICATION**

**PYLE, Judge**

STATEMENT OF THE CASE

This appeal involves a family dispute between half-siblings—Robert Kutchinski ("Robert"), Sheila Graves f/k/a Sheila Kutchinski ("Sheila"), John Kutchinski ("John"), Joseph Strazzante ("Joseph"), and Monty Strazzante ("Monty")—over the revocable living trust ("the Trust") created by their mother, Dorothy Rhoades ("Dorothy"). When Dorothy initially created the Trust in 2003, she included all her children as beneficiaries. In July 2010, eleven days before her death, Dorothy amended the Trust and other estate planning documents to exclude Robert as a beneficiary after Joseph contacted Dorothy's attorney regarding changes to be made to the Trust.

After Dorothy's death, Robert filed a petition to docket the Trust and to determine the Trust's beneficiaries, alleging that Dorothy lacked testamentary capacity and was under the undue influence of Joseph when she amended the Trust and other estate planning documents. Joseph and Monty filed a motion for summary judgment, arguing that there were no genuine issues of material fact regarding testamentary capacity and undue influence and that they were entitled to judgment as a matter of law. Robert, Sheila, and John filed a joint summary judgment response, arguing that there were genuine issues of material fact regarding whether Dorothy was of sound mind and under undue influence at the time she amended the Trust in July 2010. The trial court granted the summary judgment motion. Robert now appeals the trial court's order granting Joseph and Monty's motion for summary judgment.[1]

---

[1] Robert, alone, commenced the underlying action challenging the July 2010 amendment to the Trust. Later, Sheila, who was represented by the same attorney as Robert, joined Robert in various pleadings, including the summary judgment response. Sheila was removed as a beneficiary from the Trust in

2

We reverse and remand.

## ISSUES

1. Whether the trial court's summary judgment order was a final, appealable order.

2. Whether the trial court erred by granting summary judgment to Joseph and Monty on the issues of testamentary capacity and undue influence.

## FACTS

The facts considered in a light most favorable to Robert, the nonmoving party, follow. Dorothy had five children as a result of her first two marriages. On June 23, 2003, Dorothy executed the Trust, naming her natural born children—Robert, Sheila, John, Joseph, and Monty—as beneficiaries of the Trust.[2] Dorothy named her third husband, Elmer Rhoades ("Elmer"), as trustee and named Joseph and Robert as successor co-trustees of the Trust.[3]

On January 23, 2010, Dorothy was hospitalized with a kidney failure and placed in the intensive care unit ("ICU"). While Dorothy was in the ICU, Joseph—on his own initiative—obtained a power of attorney form from the internet and sought to have

February 2010, and there has been no challenge to that amendment. While both Robert and Sheila are named in the notice of appeal, we will collectively refer to them as "Robert" when discussing arguments made in this appeal.

Additionally, John appeared in the case below, joined in Robert and Sheila's summary judgment response, and participated in the summary judgment hearing, arguing that the trial court should deny Joseph and Monty's motion for summary judgment. John, however, did not join in Robert and Sheila's notice of appeal and has not filed an appearance or a brief with this Court. Nevertheless, John is a party to this appeal. *See* Ind. Appellate Rule 17(A) (explaining that "[a] party of record in the trial court . . . shall be a party on appeal.")

[2] Dorothy did not name her son by marriage, Kenneth Rhoades ("Kenneth"), as a beneficiary of the Trust and included a provision explaining that failure to provide a distribution to Kenneth was "intentional." (App. 18).

[3] Elmer had died on September 29, 2003.

3

Dorothy sign the power of attorney. On January 25, 2010, a hospital social worker, Carolyn Davis ("Davis"), was in Dorothy's room when Joseph tried to have Dorothy sign the power of attorney form. Davis, believing that Dorothy was confused and not able to understand what she was signing, prevented Joseph from having Dorothy sign the form.

The following day, on January 26, 2010, Joseph went back to the hospital and had Dorothy sign a power of attorney, naming him as the sole attorney-in-fact. Robert walked into Dorothy's room and confronted Joseph about the form, but Joseph did not show Robert the form.

On January 28, 2010, Dorothy was moved from the ICU to a private room at the hospital. While Joseph and Robert were in Dorothy's room, Joseph showed the power of attorney form to Robert, and they discussed it with Dorothy. Robert explained to Dorothy about the power of attorney form, and Dorothy apparently indicated that she wanted both Robert and Joseph to be joint attorneys-in-fact and to act together.

Thereafter, Robert contacted attorney Daniel Blaney ("Attorney Blaney"), who was a partner of Dorothy's attorney who had retired. Subsequently, Attorney Blaney drafted an amended power of attorney and met with Dorothy, Robert, and Joseph at the hospital on February 4, 2010. Attorney Blaney talked to Dorothy about the amended power of attorney. Dorothy executed the amended power of attorney that named Robert and Joseph as joint attorneys-in-fact to make financial and personal decisions for her. The power of attorney became effective upon execution.

Around that same time, Dorothy also amended the Trust. The amendment to the Trust was also prepared by Attorney Blaney. Dorothy amended the Trust by naming

4

Joseph and Robert as co-trustees of the Trust. Dorothy also "specifically omitted" Sheila as a beneficiary of the Trust. (App. 20). The Trust was signed by Dorothy as grantor and by Robert and Joseph as co-trustees. Additionally, Dorothy amended her beneficiary designations on her life insurance policies and excluded Sheila as a beneficiary, leaving the four sons as beneficiaries. Dorothy also amended her will to include a provision that provided for Sheila and John to each receive $5,000 for mental health care.

After Dorothy was released from the hospital, she had to get frequent dialysis treatments at her doctor's office. Dorothy first lived with Monty from February 25, 2010 to March 18, 2010. While Dorothy lived with Monty, Robert helped take Dorothy to her dialysis treatments. On March 18, 2010, Robert took Dorothy to her dialysis treatment and later discovered that Monty had left Dorothy's belongings on Monty's front porch.

From March 18, 2010, to July 1, 2010, Dorothy lived at Robert's house. While Dorothy lived at Robert's house, she had a surgery to change the type of dialysis that she received. Her dialysis treatments were increased to a daily basis and then done at home instead of at the doctor's office. The family was required to receive training to assist Dorothy with her dialysis. Dorothy's doctor also had a family meeting with Dorothy's children to explain that they needed to assist Robert in administering Dorothy's dialysis. While Dorothy lived at Robert's house, her primary medications were Tramadol and Xanax.

On July 1, 2010, Dorothy returned to her own home and was assisted by two healthcare providers, Wanda Kessler ("Caretaker Kessler") and Edith Lucas ("Caretaker Lucas"), while at her home. From July 7 to July 12, 2010, Dorothy was hospitalized with

5

abdominal pain. Upon Dorothy's discharge from the hospital, she received prescriptions for Tramadol and Alprazolam and returned to her own home.

A few days later, Dorothy fell at her house and was again hospitalized. After her release from the hospital, Dorothy was taking the following medications: Tramadol, Hydrocodone, Xanax, Furosemide, Prochlorperazine, and Exforge. Around this time, Dorothy stopped her dialysis, and Caretaker Kessler and Caretaker Lucas stopped providing healthcare to Dorothy. Monty then hired Anita Ray ("Caretaker Ray") as Dorothy's healthcare provider.

On July 26, 2010, Joseph went to visit Dorothy. Joseph had not seen Dorothy for a few months. Two days later, on July 28, 2010, Joseph contacted Attorney Blaney and told him that Dorothy wanted to amend the Trust, the power of attorney, and her will. Attorney Blaney prepared amendments to these documents and met with Dorothy at her house on July 29, 2010. Dorothy amended her power of attorney to remove Robert as an attorney-in-fact and to name Joseph as her sole attorney-in-fact with power to act for her in all financial and personal matters.

In the amendment to the Trust, Dorothy "specifically omitted" Robert as a beneficiary of the Trust. (App. 22). Dorothy also excluded Sheila. Thus, the only children that were beneficiaries of Dorothy's trust were Joseph, Monty, and John. Dorothy also amended the Trust by removing Robert as a co-trustee and naming Joseph and Monty as co-trustees. The Trust was signed by Dorothy as grantor and by Joseph and Monty as co-trustees. That same day, Dorothy also executed change of beneficiary

6

forms for various life insurance policies, excluding Robert as a beneficiary. Additionally, Dorothy also amended her will, naming Joseph and Monty as co-personal representatives.

Eleven days after she amended the Trust, on August 9, 2010, Dorothy died. On September 16, 2010, Robert filed a Petition to Docket Trust and to Determine Beneficiaries. In his petition, Robert alleged that Dorothy lacked testamentary capacity and was under the undue influence of Joseph at the time she executed the amendments. Robert requested a hearing "to determine the validity of the execution of the amendments to the [Trust]; the powers of attorney, wills and any and all other estate planning documents[.]" (App. 11).[4]

On September 21, 2010, Robert filed a motion for a temporary restraining order, requesting that Joseph and Monty be enjoined from disposing of the proceeds from two life insurance annuities—one in the amount of $100,000.00 and the other for $38,000.00—"due to the fact that the beneficiaries were changed less than ten days prior to [Dorothy's] death[.]" (App. 29).[5] In the motion, Robert contends that he and Sheila will suffer irreparable injury if an injunction is not issued.

Thereafter, the parties entered into a stipulated preliminary injunction and order, agreeing that the proceeds from the life insurance annuities—of which Joseph, Monty, and John were beneficiaries—would not be distributed. They also agreed that all parties were enjoined from disposing of any of Dorothy's assets or proceeds from the Trust.

---

[4] There is no information in the record regarding whether Dorothy's will was ever probated.

[5] Robert's motion indicates that it has an Exhibit A attached to it, but that exhibit is not included in Appellant's Appendix.

7

On November 22, 2011, Joseph and Monty filed a motion for summary judgment, alleging that there were no issues of material fact regarding whether Dorothy was of unsound mind. Neither Joseph and nor Monty executed an affidavit to include in their designated evidence; instead, they relied on a deposition of Attorney Blaney. They also argued that there was no issue of material fact regarding undue influence, relying simply on their argument that Dorothy was of sound mind.

Thereafter, John retained an attorney and joined with Robert and Sheila in responding to Joseph and Monty's motion for summary judgment. In their summary judgment response, they argued that there were genuine issues of fact that precluded summary judgment. They submitted designated evidence, including various affidavits to show that there was an issue of fact regarding Dorothy's testamentary capacity, especially in light of the medications that she was taking around the time that she amended the Trust, and an issue of fact regarding undue influence.

On March 22, 2012, the trial court held a summary judgment hearing.[6] During the hearing, John's attorney and Robert and Sheila's attorney argued that summary judgment was not appropriate because there were genuine issues of material fact regarding testamentary capacity and undue influence. At the end of the hearing, the trial court took the summary judgment matter under advisement.

On June 4, 2012, the trial court issued an order granting Joseph and Monty's motion for summary judgment. The trial court's order provided that "[t]here are no

---

[6] During the hearing, the trial court also heard argument regarding Robert's show cause petition, which alleged that Joseph and Monty had violated the trial court's injunctive order. At the end of the hearing, the trial court denied Robert's show cause petition.

8

material issues of fact herein as to either the capacity of or any undue influence over Dorothy Rhoades on the date and time of the execution of her estate planning documents" and that "[t]he Trustees [Joseph and Monty] are entitled to judgment as a matter of law." (App. 8). Robert now appeals.

After the notice of appeal was filed in this case, some procedural motions were filed and corresponding orders issued. For example, following Joseph and Monty's filing of a motion to remove the Trust from the docket, the trial court held a hearing and then issued an order removing the Trust from the docket and closing the court's file.

Additionally, prior to filing an appellate brief, Robert filed with this Court a motion to stay the proceedings and to enforce the trial court's orders enjoining Joseph and Monty from disposing of assets pending this appeal. This Court's motions panel granted Robert and Sheila's stay motion and, pursuant to Indiana Appellate Rule 18, set an appeal bond in the amount of $25,000.00.

Finally, after briefing was completed, Joseph and Monty filed a motion to dismiss this appeal and to vacate the stay because Robert had not paid the appeal bond. This Court's motions panel denied Joseph and Monty's motion. We now address the issues in this appeal.

DECISION

1.   Jurisdiction

Before turning to the issue of whether summary judgment was appropriately granted, we address Joseph and Monty's cross-appeal argument that our Court lacks jurisdiction based on their allegation that the trial court's summary judgment order was

9

not a final judgment. Specifically, they contend that the trial court's order granting summary judgment was not a final order because the trial court did not close the trust case and remove the case from the trust docket when it granted summary judgment.

On the other hand, Robert and Sheila contend that the trial court's order granting summary judgment to Joseph and Monty was a final judgment because it completely disposed of Robert's petition to docket the Trust and challenge thereto.

This Court has jurisdiction in all appeals from final judgments. Ind. Appellate Rule 5(A). A "final judgment" is one which "disposes of all claims as to all parties[.]" App. R. 2(H)(1). *See also Bueter v. Brinkman*, 776 N.E.2d 910, 912-13 (Ind. Ct. App. 2002) (explaining that a final judgment is one that "disposes of all issues as to all parties, to the full extent of the court to dispose of the same, and puts an end to the particular case as to all of such parties and all of such issues" and "reserves no further question or direction for future determination" (citations and internal quotations omitted)). For an order to be a final judgment under Appellate Rule 2(H)(1), the order "must dispose of all issues as to all parties, ending the particular case and leaving nothing for future determination." *Ramsey v. Moore*, 959 N.E.2d 246, 251 (Ind. 2012) (citing *Georgos v. Jackson*, 790 N.E.2d 448, 451 (Ind. 2003), *reh'g denied*).

To support their argument that trial court's summary judgment order was not a final judgment, Joseph and Monty rely on *In re Estate of Botkins*, 970 N.E.2d 164 (Ind. Ct. App. 2012). In the *Botkins* case, one of the parties filed a motion to set aside a settlement agreement in an estate case that had already been opened. *Id.* at 165-66. The trial court denied the motion and then certified its order for interlocutory appeal. *Id.*

10

Our Court, however, denied the party's motion to accept jurisdiction over the interlocutory order. *Id.* Thereafter, the trial court entered an order "purporting" to make the interlocutory order "final and appealable." *Id.*

When the party then returned to our Court to appeal the order, we explained that the trial court's order was not a final judgment under Appellate Rule 2(H)(1) because it did not put an end to the estate case. *Id.* We discussed the fact that the estate case remained open and that "orders issued by a probate court are not final until the estate is closed." *Id.* at 167 (citing *Dawson v. Estate of Ott*, 796 N.E.2d 1190, 1194 n.2 (Ind. Ct. App. 2003)).[7]

Unlike *Botkins,* where the appealed order disposed of a motion within an already existing estate case but did not end the case or leave nothing for further determination, here, the trial court's order from this trust case was a final judgment. Robert commenced the underlying trust proceeding by filing a petition to docket the Trust and to determine beneficiaries. In his petition, Robert alleged that Dorothy had executed the July 2010 amendment to the Trust "under duress and the undue influence of Joseph" and that her "medical condition" rendered her "unaware and unable to determine the contents of said amendments at the time she executed [the] same." (App. 11). Joseph and Monty filed a summary judgment motion, specifically arguing that there were no genuine issues of fact regarding testamentary capacity and undue influence. On June 4, 2012, the trial court issued an order granting summary judgment, determining that "[t]here were no material issues of fact herein as to either the capacity of or any undue influence over Dorothy

---

[7] We ultimately dismissed the *Botkins* appeal because the trial court's order did not use the "magic language" of Trial Rule 54(B).

11

Rhoades on the date and time of the execution of her estate planning documents" and that Joseph and Monty were "entitled to judgment as a matter of law." (App. 8). Thereafter, on June 14, 2012, Joseph and Monty filed a motion to remove the Trust from the docket. The notice of appeal was then filed on June 27, 2012. After holding a hearing on Joseph and Monty's motion, the trial court, on September 13, 2012, issued an order removing the Trust from the docket and closing the court's file, noting that there were "no pending issues" in the case. (App. 382).

Robert is appealing the grant of summary judgment, which is a final judgment because it disposed of all claims as to all parties. *See* Ind. Appellate Rule 2(H)(1). *See also In re Guardianship of Phillips*, 926 N.E.2d 1103, 1106 (Ind. Ct. App. 2010) (holding that the trial court's judgment was a final judgment and explaining that it was "immaterial" that the guardianship case remained open where no other issues raised in the pleadings were at issue); *Keck v. Walker*, 922 N.E.2d 94, 99 (Ind. Ct. App. 2010) (holding that trial court's order was a final, appealable judgment where it had the effect of disposing of all issues as to all parties). The only issues raised in Robert's petition to docket the Trust were disposed of by the trial court's grant of summary judgment to Joseph and Monty, and it is immaterial that the trial court did not remove the trust case from the docket when it entered the summary judgment order. Because the trial court's summary judgment order is a final judgment, we will proceed to our appellate review of the trial court's order.

2.      Summary Judgment

12

Robert argues that the trial court erred by granting Joseph and Monty's motion for summary judgment on his claims that Dorothy lacked testamentary capacity and was under undue influence at the time she amended the Trust and other estate documents. We will review each issue in turn.

When reviewing a trial court's order granting summary judgment, we apply the same standard as that used in the trial court. *Kopczynski v. Barger*, 887 N.E.2d 928, 930 (Ind. 2008). Summary judgment is appropriate only where the designated evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth . . . , or if the undisputed facts support conflicting reasonable inferences." *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (internal citations omitted).

"[T]he party seeking summary judgment has the initial burden of proving the absence of a genuine issue of material fact as to an outcome-determinative issue. Only then must the non-movant come forward with contrary evidence demonstrating the existence of genuine factual issues that should be resolved at trial." *Kroger Co. v. Plonski*, 930 N.E.2d 1, 9 (Ind. 2010) (citing *Jarboe v. Landmark Cmty. Newspapers of Ind., Inc.*, 644 N.E.2d 118, 123 (Ind. 1994), *reh'g denied*). Indeed, when the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually

unchallenged affirmative defense that bars the plaintiff's claim. *Dible v. City of Lafayette*, 713 N.E.2d 269, 272 (Ind. 1999).

Summary judgment "should not be used as an abbreviated trial, even where the proof is difficult or where the court may believe that the non-moving party will not succeed at trial." *Hudson v. Davis*, 797 N.E.2d 277, 287 (Ind. Ct. App. 2003), *reh'g denied, trans. denied. See also Carrell v. Ellingwood*, 423 N.E.2d 630, 636 (Ind. Ct. App. 1981) (explaining that even if a trial court believes that a party moving for summary judgment will prevail at trial or believes that the likelihood of the nonmoving party's recovery is improbable, "such are no bases for summary judgment"). Instead, in determining whether summary judgment is appropriate, we construe all facts and reasonable inferences in favor of the nonmoving party. *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind. 2001). We must carefully review a decision on summary judgment to ensure a party is not improperly denied his day in court. *Id.* at 974.

A. *Testamentary Capacity*

Robert first argues that the trial court erred by granting summary judgment to Joseph and Monty on his claim that Dorothy lacked testamentary capacity at the time she amended the Trust.

"The capacity of a settlor that is required to . . . amend . . . a revocable trust is the same as the capacity of a testator that is required to make a will." Ind. Code § 30-4-2-10(b). Every person is presumed to be of sound mind to execute a will. *Gast v. Hall*, 858 N.E.2d 154, 165 (Ind. Ct. App. 2006) (citing *Hays v. Harmon*, 809 N.E.2d 460, 464 (Ind.

14

Ct. App. 2004), *trans. denied*), *reh'g denied*, *trans. denied*. To rebut this presumption, a party must show that the testator, at the time of executing his will, lacks the mental capacity to know: "(1) the extent and value of [her] property; (2) those who are the natural objects of [her] bounty; and (3) their deserts, with respect to their treatment of and conduct towards [her]. *Id.* It is the testator's mental capacity or soundness of mind at the time she executes the document at issue that is controlling. *Id.* However, evidence of the testator's mental condition before the date of execution is admissible as it relates to the testator's mental state at the time she executed the document at issue. *Id.*

In moving for summary judgment on this issue, Joseph and Monty designated the following evidence: Robert's initial petition challenging the Trust; the Trust and its two amendments; other documents (including the two powers of attorney executed in 2010 and the July 2010 will); and portions of Attorney Blaney's deposition in which he generally concluded that Dorothy was of sound mind but also stated that he was unaware if Dorothy was taking any medications at the time she amended the Trust.

Robert contends that Attorney Blaney's deposition is not enough to entitle Joseph and Monty to summary judgment and that "there are ample questions of fact as to Dorothy Rhoades['s] testamentary capacity when she executed the amendments to her estate plan documents on July 29, 2010." (Robert's Br. at 17). Specifically, he contends that there is a genuine issue of material fact regarding Dorothy's capacity given the side effects of the medications she was taking at the time she made the amendments and given the surrounding facts leading up to her amendments, including the cessation of her dialysis.

15

We agree that summary judgment was inappropriate in this case as Robert's designated evidence establishes that there is a genuine issue of material fact in regard to Dorothy's testamentary capacity. In his designated evidence, Robert included various affidavits regarding Dorothy's capacity and medication use. Among those affidavits was an affidavit from John, who stated that Dorothy was taking Tramadol, Hydrocodone, Xanax, thyroid medication, and blood pressure medication and that he had seen Caretaker Ray give Dorothy morphine three or four times.

Robert also included an affidavit from a pharmacist, who explained the side effects of the medications that Dorothy was taking between July 12, 2010 and August 9, 2010. Attached to the pharmacist's affidavit was a printout from Dorothy's pharmacy showing that between July 20 and 26, 2010, Dorothy filled prescriptions for Hydrocodone, Furosemide, Prochlorperazine, and Exforge. The pharmacist stated that "most of the medications" that Dorothy was taking "caused drowsiness, dizziness, light-headedness and/or blurred vision." (App. 309). The pharmacist also stated that the "side effects taken in combination with each other would lead one to believe that [Dorothy] was not in her right mind due to the amounts and variety of medications that she was on from July 12, 2010 through August 9, 2010." (App. 309). Finally, the pharmacist opined that "it is more probable than not, within a reasonable degree of medical certainty that [Dorothy] was not coherent enough to make rational decisions as to her estate planning matters, due to the medications she was consuming." (App. 310).

Additionally, Robert included an affidavit from Caretaker Lucas, who stated that she had known Dorothy for eleven years before her death. She also stated that she helped

16

to care for Dorothy from March 18 to July 12, 2010, and that she was familiar with the medications that Dorothy was taking. Caretaker Lucas also stated that she visited with Dorothy two or three times per week from July 12 to July 31, 2010 and that "[d]uring those visits, [she] noticed that [Dorothy] was under the affects [sic] of her medication which resulted in her inability to fully comprehend what was fully happening to her." (App. 314).

The state of Dorothy's mind at the time she amended the Trust and other estate documents involves a fact-specific analysis that does not lend itself to summary judgment. Construing the facts and reasonable inferences in favor of Robert as the nonmoving party, we conclude that there is a genuine issue of material fact regarding whether Dorothy was of sound mind at the time she executed the amendments at issue. Accordingly, we conclude that the issue of testamentary capacity is a question of fact for a jury to determine and that the trial court erred by granting summary judgment on this issue. *See, e.g.*, *Gast*, 858 N.E.2d at 165-66 (reversing trial court's grant of summary judgment on issue of testamentary capacity); *Estate of Verdi ex rel. Verdi v. Toland*, 733 N.E.2d 25, 28 (Ind. Ct. App. 2000) (reversing the trial court's grant of summary judgment where there was an issue of material fact regarding soundness of mind), *reh'g denied*; *Carrell*, 423 N.E.2d at 635 (explaining that issues regarding a person's state of mind are more appropriately a question of fact for a trier of fact).

B. *Undue Influence*

17

Robert also argues that the trial court erred by granting summary judgment to Joseph and Monty on his claim that Dorothy was under the undue influence of Joseph at the time she amended the Trust.

Undue influence is "'the exercise of sufficient control over the person, the validity of whose act is brought into question, to destroy his free agency and constrain him to do what he would not have done if such control had not been exercised.'" *Gast*, 858 N.E.2d at 166 (quoting *In re Estate of Wade*, 768 N.E.2d 957, 962 (Ind. Ct. App. 2002), *trans. denied*). Undue influence is an "intangible thing that only in the rarest instances is susceptible of what may be termed direct or positive proof." *Gast*, 858 N.E.2d at 166. That difficulty is enhanced by the fact that one who seeks to use undue influence does so in privacy. *Id.* Accordingly, "undue influence may be proven by circumstantial evidence, and the only positive and direct proof required is of facts and circumstances from which undue influence reasonably may be inferred." *Id.* The following circumstances tending to support an inference of undue influence may be properly considered by our Court: (1) the character of the beneficiary; (2) any interest or motive the beneficiary might have to unduly influence the testator; and (3) the facts and surrounding circumstances that might have given the beneficiary an opportunity to exercise such influence. *Id.* "Undue influence is essentially a question of fact that should rarely be disposed of via summary judgment." *Id.*

Under Indiana law, a confidential relationship sufficient to support an undue influence claim may arise as either a matter of law ("confidential relationships as a matter of law") or under the particular facts of a case ("confidential relationships in fact").

18

*Carlson v. Warren*, 878 N.E.2d 844, 851 & 851 n.3 (Ind. Ct. App. 2007). Among those confidential relationships as a matter of law are the relationships between a parent and child[8] and between a principal and agent. *Id.*; *see also Supervised Estate of Allender v. Allender*, 833 N.E.2d 529, 533 (Ind. Ct. App. 2005), *reh'g denied*, *trans. denied.* These relationships raise "a presumption of trust and confidence as to the subordinate party on the one side and a corresponding influence as to the dominant party on the other." *Allender*, 833 N.E.2d at 533. The law will impose a presumption that a transaction was the result of undue influence where the plaintiff's evidence shows that: (a) there was such a relationship; and (b) the dominant party benefits from a questioned transaction. *Id.*; *see also Carlson*, 878 N.E.2d at 851. The burden then shifts to the dominant party to rebut the presumption by providing "'clear and convincing evidence'" that the dominant party "'acted in good faith, did not take advantage of [the] position of trust, and that the transaction was fair and equitable.'" *Carlson*, 878 N.E.2d at 851 (quoting *In re Guardianship of Knepper*, 856 N.E.2d 150, 154 (Ind. Ct. App. 2006), *clarified on reh'g*, *trans. denied*); *see also Allender*, 833 N.E.2d at 533 (explaining that the presumption of undue influence may be rebutted if dominant party establishes "clear and unequivocal proof that the questioned transaction was made at arm's length and thus valid").

As explained above, as the party moving for summary judgment, Joseph and Monty had the burden of designating evidence showing that there were no genuine issues

---

[8] In a parent-child relationship, the parent is generally the dominant party, but a child may be determined to be the dominant party by virtue of being a caretaker for the parent. *See, e.g.*, *See Allender*, 833 N.E.2d at 533-34. However, "[t]he question of which party has attained the position of the dominant party, under the evidence, is a question for the trier of fact." *Barkwill v. Cornelia H. Barkwill Revocable Trust*, 902 N.E.2d 836, 839-40 (Ind. Ct. App. 2009), *trans. denied.*

of material fact regarding whether Dorothy was under undue influence at the time she amended the Trust and other documents in July 2010. *See Kroger*, 930 N.E.2d at 9; *Jarboe*, 644 N.E.2d at 123. In an attempt to meet their burden to show the absence of a material fact on this issue, Joseph and Monty merely relied on their argument regarding testamentary capacity. In other words, they argued there was no undue influence because Dorothy was of sound mind.

Because we have determined that there is an issue of material fact regarding testamentary capacity, we conclude that summary judgment was also not appropriate on the issue of undue influence. Here, Robert filed this action challenging the July 2010 amendment to the Trust and alleging that Joseph had unduly influenced Dorothy to amend the Trust. The undisputed evidence shows that Joseph is a child of Dorothy and that he benefitted from the amendment of the Trust. Additionally, Joseph was an attorney-in-fact for Dorothy. Joseph and Monty have not met their initial burden on summary judgment and have not shown that there is an absence of an issue of material fact regarding undue influence. Indeed, the question remains as to whether Joseph was in a dominant position in the parent-child relationship such that a presumption of undue influence would be imposed. Accordingly, we reverse the trial court's grant of summary judgment and remand for further proceedings. *See, e.g.*, *Gast*, 858 N.E.2d at 166-67 (explaining that "[u]ndue influence is essentially a question of fact that should rarely be disposed of via summary judgment" and reversing trial court's grant of summary judgment on undue influence); *Estate of Verdi*, 733 N.E.2d at 29 (reversing the trial

court's grant of summary judgment where there was an issue of material fact regarding undue influence).

Reversed and remanded.

KIRSCH, J., and VAIDIK, J., concur.