


FILED

Jan 27 2026, 9:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Anita J. Woodson,

*Appellant-Defendant*

v.

Ronda Randall, as Personal Representative of the Estate of
Julian M. Roache,

*Appellee-Plaintiff*

---

January 27, 2026

Court of Appeals Case No.
25A-PL-779

Appeal from the Marion Superior Court

The Honorable Gary L. Miller, Judge

Trial Court Cause No.
49D03-1901-PL-2839

---

**Opinion by Judge DeBoer**
Judges Bradford and Weissmann concur.

**DeBoer, Judge.**

## Case Summary

[1] For several years, Anita Woodson managed the finances of her elderly stepfather, Julian Roache (the Decedent). After the Decedent died, his Estate[1] sued Woodson, alleging that she had wrongfully transferred a significant amount of his money into her personal bank account. After dismissing claims related to Woodson's alleged mismanagement of assets belonging to a trust set up by the Decedent and misuse of his social security benefits,[2] the trial court held a bench trial on the remaining claims and entered a judgment against Woodson. Woodson raises several issues on appeal, which we consolidate and restate as:

1) Whether the Estate's claims were barred by the statute of limitations.
2) Whether the court erred in applying the common law presumption of undue influence to Woodson's deposits of the Decedent's funds into her account.
3) Whether the court made certain erroneous evidentiary rulings at trial.

Finding no error, we affirm.

---

[1] We refer to the Decedent's Estate throughout this opinion as "the Estate" or "the Decedent's Estate."

[2] In a prior interlocutory appeal, this Court affirmed the dismissal of these claims and remanded for further proceedings related to Woodson's alleged misuse of the Decedent's funds other than his social security benefits or assets belonging to the trust. *Randall v. Woodson*, 212 N.E.3d 691, 696-97 (Ind. Ct. App. 2023), *clarified on reh'g*, *trans. denied*.

## Facts and Procedural History

[2] Woodson's mother married the Decedent in 2007 when he was in his mid-eighties. By 2013, the Decedent had been diagnosed with dementia and needed assistance managing his finances and making medical decisions. He appointed Woodson as his attorney in fact under a general power of attorney (the POA), named her as his healthcare representative, and made her the trustee of a revocable living trust he had created to manage assets for his and his wife's benefit. Moreover, the Social Security Administration (SSA) began paying the Decedent's social security benefits to Woodson as his representative payee.[3]

[3] At some point, the Decedent opened a joint bank account in his and Woodson's names, which he intended Woodson to use to manage his money and pay his expenses. It is undisputed that all the funds in that account belonged to the Decedent. However, Woodson eventually began to deposit the Decedent's social security benefits, pension payments, and other funds (including proceeds from the sale of trust assets) into her personal bank accounts, and frequently transferred money from the joint account into her personal checking account.

[4] In February 2016, one of Woodson's sisters filed a petition seeking to be appointed as the Decedent's guardian and alleging that his advanced dementia

---

[3] The SSA will pay benefits to a recipient's representative payee if the recipient is "(1) [l]egally incompetent or mentally incapable of managing benefit payments; or (2) [p]hysically incapable of managing or directing the management of his or her benefit payments." 20 C.F.R. § 404.2010(a).

rendered him incapable of managing his own affairs.[4]  On the same day, another of Woodson's sisters, Ronda Randall, filed a sperate petition seeking to be named their mother's guardian.[5]  Woodson contested both guardianship petitions, and the Decedent died in January 2017 while they were pending.  Thereafter, in June, Woodson consented to the appointment of Randall as their mother's guardian.  Around that same time, Randall was also appointed personal representative of the Decedent's Estate.[6]

[5]  In January 2019, on the two-year anniversary of the Decedent's death, Randall filed this lawsuit in her capacities as the Estate's personal representative and her mother's guardian.[7]  The complaint alleged that Woodson had breached her fiduciary duties to the Decedent by commingling his funds with her own and had refused to provide an accounting for her use of his and the trust's assets.[8]

---

[4] At the bench trial in this action, the trial court took judicial notice of the documents filed in the Decedent's guardianship proceedings under Cause No. 49D08-1602-GU-7081, but Woodson failed to include any of the relevant filings from that case in her appendix on appeal.  We have accessed them using our Odyssey Case Management System.

[5] It is unclear from the record whether the trial court took judicial notice of the guardianship proceedings regarding the parties' mother.  Pursuant to Indiana Evidence Rule 201, we take judicial notice of the court records in that case, which were filed under Cause No. 49D08-1602-GU-7078.  *See* Ind. Evidence Rule 201(b)(5) ("A court may judicially notice a law, which includes[] . . . records of a court of this state[.]").

[6] We also take judicial notice of the documents filed in the Decedent's Estate under Cause No. 49D08-1706-ES-22389.

[7] After the parties' mother died, her estate was substituted as a party.

[8] In violation of Appellate Rule 50, Woodson failed to include a copy of the complaint or any other relevant filings (other than the appealed order) in her appendix on appeal.  *See* Ind. Appellate Rule 50(A)(2)(f) ("The appellant's Appendix shall contain . . . copies of . . . pleadings and other documents from the Clerk's Record in chronological order that are necessary for resolution of the issues raised on appeal[.]").  We have accessed those documents using our Odyssey Case Management System.

Woodson filed an answer denying those allegations and asserted a claim against Randall alleging that she had wrongfully taken assets belonging to the Estate. After unsuccessfully moving to dismiss Woodson's claim, Randall filed an answer denying any liability to Woodson or the Estate.

[6] Over two years after the complaint was filed, Woodson filed a motion to dismiss it. She argued that (1) neither the Decedent's Estate nor that of the parties' mother could prove they had an interest in the trust's assets and (2) the trial court lacked subject matter jurisdiction over any claim relating to Woodson's misuse of the Decedent's social security benefits. The court granted that motion and, on Randall's request, certified its order for interlocutory appeal.

[7] On interlocutory appeal, Randall did not challenge the dismissal of claims relating to Woodson's alleged misuse of trust assets. *See Randall v. Woodson*, 212 N.E.3d 691, 692 n.1 (Ind. Ct. App. 2023) [hereinafter, "*Randall I*"] ("Randall does not appeal the dismissal of [claims pertaining to the trust, so] we address only those claims brought by Randall in her capacity as the personal representative of [the Decedent's] estate[.]"), *clarified on reh'g*, *trans. denied*. With respect to the alleged misuse of the Decedent's social security benefits, the panel agreed with the trial court that it did not have jurisdiction, reasoning:

> [T]here exists within the [Social Security] Act and federal regulations a comprehensive scheme directed at preventing, identifying, and rectifying the misuse of benefit funds by representative payees. That scheme defines what constitutes misuse of benefits and provides mechanisms within the SSA for

determining when misuse has occurred, for the recovery of benefits from the representative payee, and for payment of misused benefits to the beneficiary or an alternate representative payee. We infer from the existence of this extensive body of regulation that this is an instance of field preclusion and that Congress intended for the SSA to exercise exclusive authority over the issues of SSA benefit misuse by representative payees and over the recovery of those misused funds. Therefore, this body of federal law preempts state law claims such as Randall's seeking to recover SSA benefits from a representative payee.

* * *

[I]n light of the combined effect of the trial court's dismissal of Randall's claims related to the [t]rust's assets and our holding today, only those of Randall's claims related to assets which were neither [t]rust assets nor [the Decedent's] SSA benefits may go forward, if any exist.

*Id.* at 695, 696 (internal quotation marks and citations omitted). On rehearing, the panel reiterated its holding, clarified that it affirmed only the dismissal of claims relating to trust assets or the Decedent's social security benefits, and remanded for further proceedings on "any remaining claims[.]" *Randall v. Woodson*, No. 22A-PL-2830, at *1 (Ind. Ct. App. Sept. 6, 2023) (mem.), *granting reh'g, trans. denied.*

[8] On remand, the trial court held a bench trial and entered judgment against Woodson. At the parties' request, it issued findings of fact and conclusions of law, reasoning in part that

[g]iven [Woodson's] role as attorney-in-fact for [the Decedent], her actual handling of [the Decedent's] financial and health matters, her role as Representative Payee under the rules of the Social Security Administration, [] her close familial relationship with [the Decedent], and [the Decedent's] age and overall health condition post two strokes, Woodson acted in a fiduciary capacity on behalf of [the Decedent] from at least 3/12/2015 to the time of his death.

When a fiduciary relationship exists and the fiduciary benefits from a questioned transaction, a presumption of undue influence arises and the burden shifts to the fiduciary to rebut the presumption. The deposits of funds belonging to [the Decedent] into [Woodson's] personal account [] benefited Woodson and she failed to provide evidence to rebut the presumption of undue influence.

Appellant's Appendix Vol. 2 at 32.

[9] In calculating the Estate's damages, the trial court found that Woodson had transferred $96,913.86 of the Decedent's funds into her checking account but had presented evidence of just $41,547.96 in expenditures made for the Decedent's benefit. Accordingly, the court concluded that "Woodson ha[d] failed to account for a total of $55,365.90[.]" *Id.* at 29. Furthermore, in denying Woodson's claim against Randall, the court noted that Woodson had

presented "no evidence at trial to support" it. *Id.* at 31. Woodson now appeals.[9]

## Discussion and Decision

[10] Where, as here, the trial court issued findings of fact and conclusions of law at the parties' request following a bench trial, we apply Trial Rule 52(A)'s two-tiered standard of review. First, we determine whether the evidence supports the trial court's findings and second, whether the findings support the judgment. *Town of Linden v. Birge*, 204 N.E.3d 229, 233 (Ind. 2023). We will not reverse the findings or judgment unless they are clearly erroneous. *State v. Int'l Bus. Mach. Corp.*, 51 N.E.3d 150, 158 (Ind. 2016). A finding is clearly erroneous if it is not supported by the evidence or reasonable inferences drawn therefrom, and a judgment is clearly erroneous if the trial court "relie[d] on an incorrect legal standard." *Id.* In reviewing the findings, we do not reweigh evidence or judge the credibility of witnesses. *Id.* We review the trial court's legal conclusions

---

[9] Woodson has not presented any argument on appeal regarding her claim against Randall, so we address only the Estate's claims against Woodson.

and issues involving statutory interpretation de novo. *Gittings v. Deal*, 109 N.E.3d 963, 970 (Ind. 2018), *reh'g denied*.[10]

## 1. Statute of Limitations

[11]    We first address Woodson's argument that the Estate filed the complaint after the statute of limitations expired. The "statute of limitations is an affirmative defense that must be both pleaded and proven by the party asserting it." *Martin Oil Mktg. Ltd. v. Katzioris*, 908 N.E.2d 1183, 1187 (Ind. Ct. App. 2009), *reh'g denied*. Though Woodson raised the statute of limitations as an affirmative defense in her answer and in a post-trial memorandum, the trial court did not enter any findings explicitly addressing the issue. When the "court's findings are silent regarding facts necessary to sustain certain issues, those facts are regarded as not proved." *McIntyre v. Guthrie*, 596 N.E.2d 979, 983 (Ind. Ct. App. 1992), *trans. denied*. In such cases, "the law, in effect, implies negative findings as to such issues against the party having the burden of their proof." *Rogers v. City of Evansville*, 437 N.E.2d 1019, 1026 (Ind. Ct. App. 1982).

---

[10] In her reply brief, Woodson asks that we review the trial court's judgment for prima facie error because, according to her, the Estate's brief falls short of the cogency required by the Appellate Rules and effectively fails to respond to the issues raised on appeal. *See Hacker v. Holland*, 575 N.E.2d 675, 676 (Ind. Ct. App. 1991) ("An appellee's failure to respond to an issue raised by an appellant is akin to failure to file a brief, and subjects the appellee to reversal upon the appellant's showing of *prima facie* error[.]") (italics in original), *denying reh'g, trans. denied*. In this regard, it is ironic that Woodson casts these aspersions because her opening and reply briefs are largely difficult to follow. Woodson further accuses the Estate of "failing to provide an Appendix," Appellant's Reply Br. at 6, which rings hollow since Woodson's own appendix was deficient and non-compliant with the Appellate Rules. *See supra* note 8. Regardless, our review was not so hindered by the parties' presentation of the issues on appeal that we could not address the merits of their arguments, so we decline to review the appealed order for prima facie error.

[12] To make a prima facie showing that the Estate's complaint was brought outside the statutory period, Woodson was required to (1) identify the relevant statute of limitations period; (2) establish the date the cause of action accrued; and (3) show the action was brought on a date "beyond the relevant statutory period." *City of Marion v. London Witte Grp., LLC*, 169 N.E.3d 382, 390 (Ind. 2021). As to the first element, Woodson contends that the Estate's claims were subject to Indiana Code section 34-11-2-4(a)(2)'s two-year limitations period for claims relating to personal property, while the Estate argues it was subject to section 34-11-2-7(4)'s six-year period for fraud claims. We agree with Woodson. Because the complaint was explicitly premised on the allegation that Woodson "engaged in a continuous pattern of activity in breach of her fiduciary duties[,]" Complaint ¶ 10, the two-year limitations period applies. *See First Farmers Bank & Tr. Co. v. Whorley*, 891 N.E.2d 604, 609-10 (Ind. Ct. App. 2008) ("[B]reach of fiduciary duty is a tort claim for injury to personal property and therefore the statute of limitations is two years[.]"), *trans. denied*.

[13] As to the second element, Woodson argues the limitations period began to run in July 2016 when Randall supposedly became aware "of potential breaches of fiduciary duties by Woodson[.]" Appellant's Brief at 29. Indiana follows the "discovery rule," under which "a cause of action accrues, and the limitation period begins to run, when a claimant knows or in the exercise of ordinary diligence should have known of the injury." *Warrick Cnty. ex rel Conner v. Hill*, 973 N.E.2d 1138, 1143 (Ind. Ct. App. 2012), *trans. denied*. According to Woodson, Randall was, or could have become, aware that Woodson had

commingled the Decedent's assets with her own because of facts she learned during discovery in the guardianship proceedings. But even assuming that was true, the right to assert a claim against Woodson for breach of fiduciary duty belonged exclusively to the Decedent during his lifetime. *See Salmon v. Tafelski*, 235 N.E.3d 867, 873 (Ind. Ct. App. 2024) (explaining that a claim for breach of fiduciary duty was "a harm against [the decedent] during her lifetime, which flowed through to her estate upon her death"). As such, the relevant inquiry is when the statute began to run *against the Decedent*, not Randall.

[14] Against the Decedent, the evidence presented at trial supports a finding that the statute of limitations began to run no earlier than the date of the Decedent's death. Though the trial court did not explicitly enter any findings on this issue, it did find that Woodson made a series of transfers and deposits of the Decedent's funds into her personal account "from 3/12/2015 to the time of [the Decedent's] death on 1/19/2017[.]" Appellant's App. Vol. 2 at 28. From this, it can be inferred that the court considered Woodson's commingling of the Decedent's funds with her own to be a continuing wrong that only ended on the day the Decedent died. *See Anonymous Dr. A v. Foreman*, 127 N.E.3d 1273, 1278 (Ind. Ct. App. 2019) ("The continuing wrong doctrine 'applies where an entire course of conduct combines to produce an injury[,]'" and in such cases "the statutory limitations period does not begin to run until the end of the course of conduct[.]" (quoting *Gradus-Pizlo v. Acton*, 964 N.E.2d 865, 871 (Ind. Ct. App. 2012)). And while the continuing wrong doctrine does "not prevent the statute of limitations from beginning to run when the plaintiff learns of facts which

should lead to the discovery of the cause of action[,]" nothing in the record suggests that the Decedent, who had advanced dementia and had suffered two strokes, was ever aware that Woodson had commingled his funds with her own. *Fox v. Rice*, 936 N.E.2d 316, 322 (Ind. Ct. App. 2010) (quoting *C & E Corp. v. Ramco Indus., Inc.*, 717 N.E.2d 642, 645 (Ind. Ct. App. 1999)), *clarified on reh'g*, *trans. denied*. Accordingly, since the complaint was filed on the two-year anniversary of the Decedent's death, Woodson failed to carry her burden to prove it was barred by the statute of limitations.

## 2. Presumption of Undue Influence

Woodson's primary contention on appeal is that the trial court should not have applied the common law presumption of undue influence to her deposits and transfers of the Decedent's funds into her personal account. Under Indiana common law, certain "relationships 'raise a *presumption* of trust and confidence as to the subordinate party on the one side and a corresponding influence as to the dominant party on the other.'" *Carlson v. Warren*, 878 N.E.2d 844, 851 (Ind. Ct. App. 2007) (quoting *Supervised Est. of Allender v. Allender*, 833 N.E.2d 529, 533 (Ind. Ct. App. 2005), *reh'g denied*, *trans. denied*) (emphasis in original). When such a relationship exists and a transaction occurs between the parties that benefits the dominant party, "the law imposes a presumption that the transaction was the result of undue influence exerted by the dominant party, constructively fraudulent, and, thus void." *Nichols v. Est. of Tyler*, 910 N.E.2d 221, 229 (Ind. Ct. App. 2009) (quoting *Hamilton v. Hamilton*, 858 N.E.2d 1032, 1036 (Ind. Ct. App. 2006), *reh'g denied*, *trans. denied*.). To rebut that

presumption, the dominant party must prove "by clear and unequivocal proof that the transaction in question was made at arm's length and is therefore valid." *Id.*

[16] To support her claim that the presumption does not apply here, Woodson contends that because the Estate failed to prove that she "actually used the POA to accomplish any bank transaction[,]" the presumption does not apply pursuant to Indiana Code section 30-5-9-2(b). Appellant's Br. at 9. Under that statute,

> [a] gift, bequest, transfer, or transaction is not presumed to be valid or invalid if the gift, bequest, transfer, or transaction;
>
> > (1) is:
> >
> > > (A) made by the principal taking action; and
> > >
> > > (B) not made by the attorney in fact acting for the principal under a power of attorney; and
> >
> > (2) benefits the principal's attorney in fact.

Ind. Code § 30-5-9-2(b). In interpreting section 30-5-9-2(b), this Court has said it "abrogate[d] the common law presumption of undue influence with respect to certain transactions benefitting an attorney in fact" and conditioned the "presumption of undue influence . . . upon the attorney in fact's actual use of the power of attorney to effect the questioned transaction for his or her benefit." *In re Est. of Compton*, 919 N.E.2d 1181, 1187 (Ind. Ct. App. 2010), *trans. denied*.

However, two considerations lead to the conclusion that the legislature did not intend to abrogate the common law presumption under the present circumstances.

[17] First, while it is undisputed that Woodson did not use the POA to effect any of the questioned transactions, the transactions were made by Woodson herself, not "by the principal taking action[.]" I.C. § 30-5-9-2(b)(1)(A). Section 30-5-9-2(b) "eliminates the presumption of invalidity of a 'gift, bequest, transfer, or transaction' between the principal and the attorney-in-fact only if it is '*made by the principal*' and 'not made by an attorney-in-fact acting for the principal under a power of attorney.'" *In re Est. of Rickert*, 934 N.E.2d 726, 730 (Ind. 2010) (emphasis added); *see also Compton*, 919 N.E.2d at 1188 (noting the statute only applies when the principal "took action"). Since there is no evidence that the Decedent was involved in or even aware of any of the challenged transactions, they were subject to the common law rule and thus presumptively invalid, regardless of whether the POA was used. *See In re Est. of Wade*, 768 N.E.2d 957, 962 (Ind. Ct. App. 2002) ("[A] presumption of fraud attaches to transactions entered into during the existence of a fiduciary relationship regardless of whether the fiduciary actually used his fiduciary powers to complete the transactions."), *trans. denied*.

[18] Second, while it is true that when it applies, section 30-5-9-2(b) "frees the benefiting attorney-in-fact from a presumption of undue influence as long as the power of attorney is unused in the questioned transaction[,] . . . the presumption may be raised through proof of a confidential or fiduciary

relationship *independent of the power of attorney*[.]" *Compton*, 919 N.E.2d at 1187 (quoting 4 Daniel R. Gordon et al., *Henry's Indiana Probate Law and Practice* § 30.18 at 160.1–160.2 (2007)) (emphasis added). In other words, notwithstanding section 30-5-9-2(b), the presumption may apply to transactions benefiting an attorney in fact who owes fiduciary obligations to the principal independent of the power of attorney.[11] *Id*.

[19] Here, the trial court concluded that Woodson was in a fiduciary relationship with the Decedent not just because of the POA, but also given her "actual handling of [the Decedent's] financial and health matters, her role as Representative Payee under the rules of the [SSA], [] her close familial relationship with [the Decedent], and [the Decedent's] age and overall health condition post two strokes[.]" Appellant's App. Vol. 2 at 32. Woodson challenges only the court's conclusion that she was in a close familial relationship with the Decedent, arguing there was a "lack of evidence of closeness," and, even if there was, "[t]he mere existence of a familial relationship is insufficient to create a presumption of a confidential relationship[.]" Appellant's Br. at 27.

---

[11] Indeed, as one former Indiana Supreme Court Justice and current legal scholar has observed, in passing section 30-5-9-2(b), the General Assembly "likely concluded that imposing fiduciary obligations on an attorney in fact with respect to independent and unrelated matters would place an undue burden on the attorney-in-fact and might well discourage the undertaking of such responsibilities." Frank Sullivan, Jr., *Banking, Business, & Contract Law*, 52 IND. L. REV. 635, 651 (2019). That concern is not implicated by our circumstances where a power of attorney is one of many sources of an attorney in fact's fiduciary obligations to the principal.

As to the first point, the evidence clearly showed that Woodson and the Decedent had a close relationship, given that Woodson testified as much and that the Decedent trusted her enough to manage his finances and serve as his healthcare representative. As to the second point, familial relationships in which one family member acts as the other's caretaker can create a confidential relationship as a matter of law, as this Court explained in *In re Est. of Blair*:

> Confidential relationships as a matter of law are not restricted to relationships such as of attorney and client, guardian and ward, principal and agent, pastor and parishioner, husband and wife, parent and child. [*Lucas v. Frazee*, 471 N.E.2d 1163, 1166-67 (Ind. Ct. App. 1984)]. As *Lucas* noted, "there may be other[ ] [such relationships.]" *Id.* at 1167. Other such relationships include familial relationships where the traditional roles are reversed. For instance, in the parent-child relationship, the parent is generally considered the dominant party. *Scribner* [*v. Gibbs*], 953 N.E.2d [475, 484 (Ind. Ct. App. 2011)]. However, the child or other younger party in a familial relationship can be the dominant party under some circumstances. *See Allender*, 833 N.E.2d at 533-34; *In re Rhoades*, 993 N.E.2d 291, 301 n.8 (Ind. Ct. App. 2013). For instance, a younger relative was deemed the dominant party in *Outlaw v. Danks*, 832 N.E.2d 1108, 1110-12 (Ind. Ct. App. 2005), *trans. denied.* There, a nephew, as caretaker of his aunt, was the dominant party in the relationship, and this familial relationship was a confidential relationship as a matter of law. *Id.*

177 N.E.3d 84, 95-96 (Ind. Ct. App. 2021). In *Blair*, the panel found a confidential relationship as a matter of law when a grandchild was the full-time caregiver for her grandfather, who was unable to make decisions for himself

and experienced substantial linguistic and cognitive deficits while recovering from the removal of a cancerous brain tumor. *Id.* at 96.

[21] While Woodson was not the Decedent's full-time caretaker, she nonetheless had complete control over his finances and exercised at least some influence over his healthcare decisions. Their familial relationship as stepparent and stepchild, Woodson's control of the Decedent's money, and his inability to make decisions for himself because of his advanced dementia and strokes were enough to establish a confidential relationship as a matter of law. *See id.* ("[B]ecause the evidence established . . . a familial relationship where [the granddaughter] was the dominant party and [the grandfather] was the subordinate party, [the parties] were in a confidential relationship as a matter of law."). To conclude otherwise would require us to reweigh the evidence, which is outside our purview as an appellate court.

[22] For these reasons, the trial court did not clearly err when it concluded that Woodson was required to "present [] evidence to clearly and unequivocally rebut the presumption of fraud and/or unconscionable advantage" that attached to her deposits and transfers of the Decedent's money into her

personal account.[12]  Appellant's App. Vol. 2 at 32.  And because Woodson makes no argument challenging the trial court's conclusion that she did not meet this burden, we affirm the court's judgment that Woodson breached her fiduciary duties by exercising undue influence over the Decedent.

## 3. Evidentiary Rulings

[23]  Lastly, we address Woodson's arguments that the trial court erred when it overruled her objections to questions from the Estate at trial regarding (1) her handling of trust assets and the Decedent's social security benefits and (2) Woodson's knowledge of the Decedent's medical diagnoses.[13]  We review a court's decision to admit or exclude evidence for an abuse of discretion, "which occurs only when a trial court's ruling is clearly erroneous and against the logic

---

[12] Thus, Woodson is incorrect that she was immune from liability to the Estate under Indiana Code section 30-5-9-2(a)(1), which provides that "[a]n attorney in fact who acts with due care for the benefit of the principal is not liable or limited only because the attorney in fact[] [] also benefits from the act[.]"  While we do not comment on whether that statute provides a form of immunity, as Woodson claims, we do note that its application presupposes that an attorney in fact acted "with due care for the benefit of the principal[.]"  I.C. § 30-5-9-2(a).  Woodson points to no evidence that the Decedent received any benefit from her transfers of over $55,000 of his money that she cannot account for.  To the contrary, Woodson's actions caused the Decedent to lose a large sum of money to his obvious detriment.

[13] In making these arguments, Woodson makes several passing references implying that the Estate offered into evidence "partial, unauthenticated bank records."  Appellant's Br. at 20-21.  These references apparently relate to the fact that throughout the Estate's examination of Woodson, her attorney repeatedly objected to the admission of copies of her bank records on the basis that they had "not been authenticated as to being true and accurate."  Transcript at 10.  But on appeal, Woodson has failed to present any cogent argument that the trial court's decision to overrule those objections requires reversal.  The closest she comes is in her Summary of the Argument, where she contends that "[t]he court [] reversibly erred by admitting various partial and unauthenticated purported bank records into evidence over objection[.]"  Appellant's Br. at 12-13.  However, Woodson did not expand upon that assertion in her Argument, cite legal authority to support it, or specifically identify it in her Statement of the Issues.  Accordingly, that issue has been waived, and we do not address it.  *See Martin v. Brown*, 129 N.E.3d 283, 285 (Ind. Ct. App. 2019) ("Failure to present a cogent argument results in waiver of the issue on appeal.").

and effect of the facts before it." *Blair*, 177 N.E.3d at 92. Moreover, "we presume that a trial court in a bench trial rendered its judgment solely on the basis of admissible evidence." *Morfin v. Est. of Martinez*, 831 N.E.2d 791, 800 n.5 (Ind. Ct. App. 2005).

### A. Trust Assets and Social Security Benefits

Woodson's sole contention regarding the inadmissibility of evidence pertaining to her actions as the Decedent's SSA representative payee or the trustee of his trust is that *Randall I* "*impliedly* held that evidence related to social security benefits and trust assets was inadmissible to prove [the Estate's] remaining claims." Appellant's Br. at 19 (emphasis in original). Another panel considered a similar argument in *Marshall v. Marshall*, where a guardian argued that under *Randall I*, a probate court could not order an accounting for the use of the ward's social security benefits. No. 24A-GU-1391, at * 3 (Ind. Ct. App. Nov. 26, 2024) (mem.). In a memorandum decision, *Marshall* rejected that reading of *Randall I* and reasoned that because the probate court did not grant any party "control over or access to" any social security benefits, "*Randall [I]* [was] inapposite[.]" *Id.* We agree with *Marshall* that *Randall I* does not prevent a court from hearing evidence relating to the use and management social security benefits generally and instead merely holds that the SSA has exclusive authority to adjudicate disputes relating to such benefits.

What's more, because *Randall I* did not discuss—explicitly or implicitly—the admissibility of evidence relating to the Decedent's social security benefits or trust assets, it is distinguishable from the primary case upon which Woodson

relies, *Terex-Telelect, Inc. v. Wade*, 59 N.E.3d 298 (Ind. Ct. App. 2016), *trans denied*. There, this Court reversed a jury verdict in a products liability action after finding the defendant was erroneously permitted to raise its compliance with certain industry standards as an affirmative defense. *Id.* at 299-302. In a second appeal after remand, the panel reasoned the prior decision implicitly held that evidence relating to the defendant's compliance with industry standards was inadmissible as irrelevant. *Id.* at 304. In contrast here, because Woodson commingled the Decedent's and the trust's funds into a single account, the trial court needed to hear evidence that would enable it to calculate the value of the Decedent's social security benefits and trust assets and exclude them from the Estate's damages. Thus, that evidence was not only relevant, but vital to the Estate's remaining claims, which *Randall I* expressly held could go forward.

[26]     As the trial court stated from the bench in overruling one of Woodson's objections, it did not "have jurisdiction or authority to distribute [social security] funds or make any rulings regarding those funds, but [it could] hear how those funds interrelated with other funds[.]" Transcript at 26-27. The court clearly understood that *Randall I* prevented it from adjudicating any dispute relating to trust assets or social security benefits, but it nonetheless needed to understand the broader context of how Woodson managed and used the Decedent's finances to determine the value of other funds taken by Woodson. As such, admitting evidence relating to trust assets and the Decedent's social security benefits was not an abuse of discretion.

### B. The Decedent's Medical Diagnoses

Woodson further argues the trial court erred in permitting the Estate to ask her about the Decedent's medical diagnoses. According to Woodson, her testimony that the Decedent "suffered from dementia and had two strokes" was "inadmissible lay witness testimony" because she was not qualified to give medical opinions. Appellant's Br. at 24. But Woodson was never asked to do so; rather, the Estate's attorney simply asked "what [she] knew to be [the Decedent's] diagnos[e]s[.]" Tr. at 7. Answering that question merely required Woodson to recount what she had learned about the Decedent's medical conditions while helping care for him, managing his finances, and serving as his healthcare representative. As the trial court correctly observed, those matters were within Woodson's personal knowledge and did not require her to give a medical opinion or, as Woodson contends, provide "hearsay evidence that [she] has been told that [the Decedent] suffered from dementia and stroke[.]" Appellant's Br. at 25; *see* Ind. Evidence Rule 602 (Non-expert witnesses "may testify to a matter [] if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter"). Accordingly, the court did not abuse its discretion by allowing Woodson to testify about the Decedent's medical diagnoses.

## Conclusion

For these reasons, Woodson has failed to identify any reversible error, and we affirm the judgment of the trial court.

Affirmed.

Bradford, J., and Weissmann, J., concur.

ATTORNEY FOR APPELLANT

Sandy L. Bryant
Indianapolis, Indiana


ATTORNEY FOR APPELLEE

H. Kennard Bennett
Indianapolis, Indiana